707 F.2d 1093
 UNITED STATES of America, Plaintiff-Appellant,
v.
Lyle Gerald JOHNS, Dennis Eugene Hearron, Manuel Jesus
Duarte, Carlos Torres Leon, Jose Oros Soto,
Roberto Leon Gomez, and John Lizaraga
Redmond, Defendants-Appellees.
 No. 82-1080.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 12, 1982.
Decided June 10, 1983.
 
 L. Anthony Fines, William Walker, Tucson, Ariz., for defendants-appellees.
 Eugene R. Bracamonte, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellant.
 Appeal from the United States District Court for the District of Arizona.
 Before TRASK, ANDERSON, and CANBY, Circuit Judges.
 CANBY, Circuit Judge.
 
 
 1
 United States Customs Officers seized securely wrapped packages of marijuana from two covered pickup trucks and, three days later, opened the packages without a warrant. The trial court granted the defendants' motion to suppress the evidence. The government appeals, raising several possible exceptions to the warrant requirement. We conclude that this warrantless search violated the Fourth Amendment and accordingly, we affirm.
 
 FACTS
 
 2
 After midnight on Tuesday, August 4, 1981, customs officers, suspecting that a drug transaction might occur, began ground and air surveillance of two trucks. Shortly after the trucks stopped near a remote private airstrip southeast of Bowie, Arizona, two small airplanes landed in sequence. After both planes left, the officers approached the two trucks and smelled the odor of marijuana in the general area of the trucks. An officer looked inside the trucks and discovered several sealed boxes and plastic bags. Officers then arrested the five defendants present at the two trucks; later, other officers arrested the two airplane pilots. The agents seized the boxes and bags and took them to the Drug Enforcement Administration warehouse in Tucson, Arizona. Three days later, without obtaining a search warrant, federal agents opened some of the bales and took core samples, which laboratory analysis proved were marijuana.
 
 
 3
 After a hearing, the district court granted a motion to suppress the evidence seized. Initially, the court suppressed the evidence only against the five defendants arrested at the trucks, but later the court amended its order to include the two pilots as well.
 
 DISCUSSION
 
 4
 The government contends that the trial court erroneously suppressed the packages of marijuana seized from the trucks. The government asserts that two exceptions to the warrant requirement potentially apply here. Under the government's first theory, the marijuana in the wrapped bales was in plain view. Alternatively, the government proposes that the agents had authority to search the bales under the automobile exception. In addition, the government argues that, even if the search here fits within neither exception, Johns and Hearron, the airplane pilots, lacked an expectation of privacy that would permit them to challenge the search. We take each issue in turn.
 
 I. Plain View
 
 5
 The government argues that because of the surrounding circumstances and the odor of marijuana coming from the trucks, no warrant was required to open the packages because the contents were in plain view.[1] When officers are legitimately in a location where they observe an unconcealed object, the discovery does not constitute a search. See Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967); Ker v. California, 374 U.S. 23, 42-43, 83 S.Ct. 1623, 1634-35, 10 L.Ed.2d 726 (1963).
 
 
 6
 The government relies on the experience of the officers, the extent of the investigation, and the circumstances of the seizure as the basis for its contention that the contents of the packages were in plain view. The government draws some support from the recently decided case of Texas v. Brown, --- U.S. ----, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), in which the plain view doctrine was applied to uphold the warrantless seizure of an opaque, knotted party balloon containing heroin. As we read the plurality and concurring opinions in Brown, however, they establish only that the seizure of the container in plain view was justified when there was probable cause to believe that it contained contraband. We have no difficulty in agreeing that in the present case, the officers acted lawfully and justifiably in seizing the packages. It is a different question, however, whether an opaque container that is properly seized may be searched.
 
 
 7
 If a movable container is in plain view, seizure does not implicate any privacy interests. Therefore, if there is probable cause to believe it contains contraband, the owner's possessory interest in the container must yield to society's interest in making sure that the contraband does not vanish during the time it would take to obtain a warrant. The item may be seized temporarily. It does not follow, however, that the container may be opened on the spot. Once the container is in custody, there is no risk that evidence will be destroyed. Some inconvenience to the officer is entailed by requiring him to obtain a warrant before opening the container, but that alone does not excuse the duty to go before a neutral magistrate.
 
 
 8
 Id. --- U.S. at ----, 103 S.Ct. at 1547 (Stevens, J., joined by Brennan, Marshall, JJ., concurring). We conclude, therefore, that Brown does not support the warrantless search here.[2]
 
 
 9
 The government contends that the odor detected by the agents, emanating from the marijuana, brought that contraband into plain view. The Fourth Circuit does consider a package which gives off a distinctive odor to be like a package wrapped in transparent material, making the contents objectively obvious. United States v. Haley, 669 F.2d 201, 203-04 & n. 3 (4th Cir.), cert. denied, 457 U.S. 1117, 102 S.Ct. 2928, 73 L.Ed.2d 1329 (1982). Our precedent, however, directs that while the odor of marijuana smelled by the agents would contribute to probable cause to believe that the container held contraband, a recognized exception to the warrant requirement was necessary to justify a warrantless search. United States v. Ogden, 485 F.2d 536, 539-40 (9th Cir.1973), cert. denied, 416 U.S. 987, 94 S.Ct. 2392, 40 L.Ed.2d 764 (1974).[3] The odor and circumstances of the seizure supplied the probable cause for a search warrant. They did not eliminate the need for one.
 
 II. Automobile Exception
 
 10
 The government next contends that the warrantless search was justified under the automobile exception to the warrant requirement. For that contention to succeed, three conditions must be met. First, the Supreme Court's decision in United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), must have retroactive effect. Second, Ross must apply to the facts of this case. Finally, the three-day delay must not invalidate the warrantless automobile search.
 
 A. The Retroactivity of Ross
 
 11
 In United States v. Ross, --- U.S. ----, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982), the Supreme Court rejected the rule of Robbins v. California, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), relied on by the district court when it granted the defendants' suppression motion. In Robbins, the Court considered whether police officers entitled to conduct a warrantless search of an automobile stopped on a public roadway may open a container found within the vehicle. The Court reversed Robbins' conviction on the ground that a closed opaque container "may not be opened without a warrant, even if it is found during the course of the lawful search of an automobile." Id. at 428, 101 S.Ct. at 2847.
 
 
 12
 The following year, in Ross, the Court reexamined the automobile exception and concluded that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." 102 S.Ct. at 2172. The government argues that the decision in Ross must control here, requiring reversal, while the appellees contend that the decision should not be given retroactive effect.
 
 
 13
 This court already has applied Ross retroactively, although without discussion of the issue. United States v. Cleary, 683 F.2d 313 (9th Cir.1982). See also United States v. Rivera, 684 F.2d 308 (5th Cir.1982). The opinion in Ross indicates that the Supreme Court intended the rule to apply retroactively. See 102 S.Ct. at 2172 ("[I]t is clear that no legitimate reliance interest can be frustrated by our decision today"). No other result makes sense. The purpose of refusing to apply retroactively a new decision enforcing the exclusionary rule is to avoid penalizing police conduct when the police reasonably relied on existing judicial precedent. United States v. Peltier, 422 U.S. 531, 537-39, 95 S.Ct. 2313, 2317-18, 45 L.Ed.2d 374 (1975); see, e.g., United States v. Stewart, 595 F.2d 500, 504 (9th Cir.1979). When a court determines that a particular police practice does not violate the Constitution, there is no reason not to apply that decision retroactively. "Because the Supreme Court has declared searches such as those involved here to be constitutional, no police misconduct has in fact occurred. Hence, there is no misbehavior to be deterred, and the interest in maintaining judicial integrity is not implicated, especially in light of the previously unsettled state of the law in this area." United States v. Burns, 684 F.2d 1066, 1074 (2d Cir.1982) (applying Ross retroactively).
 
 B. The Applicability of Ross
 
 14
 The appellees argue that even if Ross is given retroactive effect, it does not apply here. They argue that the customs agents must have known that the packages contained all the contraband, so that their suspicion should have focused exclusively on the packages and not on the trucks. As a consequence, the automobile search was unauthorized and a warrant was required to search the containers under the rule of United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). Ross did not purport to overrule Chadwick.
 
 
 15
 The customs officers, however, remained some distance away while the defendants placed the packages inside the trucks. The officers did not see the packages nor have a chance to seize the contraband until after loading. The officers had probable cause to search both vehicles, not just the newly-discovered bales. Their suspicion did not focus solely on the packages; it was not obvious that all the contraband would be in the bales. The appellees could have easily secreted other drugs elsewhere in the vehicles.
 
 
 16
 In United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), the police officers had all the facts giving them probable cause to believe that contraband was in the footlocker and the suitcases before those containers were placed in the trunks of the cars. Placing the containers in the cars did not give the officers probable cause to search the entire vehicle. In Ross and in this case, the officers' suspicions were not so specific. They did not know the exact nature and packaging of the contraband transferred from the airplanes to the trucks before arriving on the scene. The officers had probable cause to search both trucks. Under Ross, they also could have opened the packages as part of that search.
 
 C. The Three-Day Delay
 
 17
 We next must determine whether the fact that the packages could have been searched without a warrant at the time of their seizure means that they could be searched without a warrant some three days later at the government warehouse. We believe that the clear thrust of our precedent answers that question in the negative, and that nothing held or said in Ross leads to a different conclusion.
 
 
 18
 In United States v. Monclavo-Cruz, 662 F.2d 1285 (9th Cir.1981), an officer arrested a female passenger of an automobile and seized her purse, which was either in her hand, on her lap, or on the seat beside her. He did not search the purse immediately, but did so about an hour later in his office, where he had taken both the purse and its owner. We assumed that the initial seizure of the purse was lawful as incident to the owner's arrest, but held that the subsequent search was invalid for lack of a warrant. It made no difference, we said, that the officer was prevented from making the search at the time of the arrest because he believed it would have created a security risk. "The fact that an officer is prevented from conducting a [permissible search at the time of the arrest] is not a sufficient reason to justify a search an hour later at the station. The protection rationale for the search no longer applies." Id. at 1288.
 
 
 19
 In United States v. Burnette, 698 F.2d 1038 (9th Cir.1983), police officers arrested the defendant on probable cause and seized the purse she was carrying. They conducted a cursory search of the purse at that time, and subsequently conducted a more thorough warrantless search at the police station. We held that the search at the station did not violate the Fourth Amendment because the initial search, properly conducted at the time of the arrest, diminished or destroyed any privacy interest the owner had in the contents of the purse. As long as the purse thereafter remained in police possession, it could be searched without a warrant. Id. at 1049-50. We pointed out, however, that "[w]here such a container is not searched immediately, ... but is instead taken to the police station and searched later, a warrant is required. United States v. Monclavo-Cruz, 662 F.2d 1285 (9th Cir.1981)." Id. 698 F.2d at 1049. Moreover, the dissent in Burnette was based on the sole ground that the record did not support the finding that the officers had in fact searched the purse at the time of the arrest. See id. at 1052-56 (Norris, J., dissenting). Neither the majority's reference to Monclavo-Cruz nor the dissent would make much sense if a warrantless station-house search were rendered lawful by the fact that an earlier search could have been made lawfully without a warrant.
 
 
 20
 The starting premise for both cases is that warrantless searches are per se unreasonable under the Fourth Amendment, subject only to narrowly prescribed exceptions confined to the circumstances that gave rise to those exceptions. Coolidge v. New Hampshire, 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971); see United States v. Martin, 693 F.2d 77, 78 (9th Cir.1982) (per curiam). Both Monclavo-Cruz and Burnette dealt with searches of items initially subject to search incident to a lawful arrest. There was no reason to stretch that exception to the warrant requirement so as to permit a later search at the police station, where "there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence." United States v. Chadwick, 433 U.S. at 15, 97 S.Ct. at 2485. In the present case, however, the containers were subject to initial search as part of the automobile exception to the warrant requirement, under the holding of Ross. We must therefore examine Ross further to determine whether anything in its rationale supports the warrantless searches conducted in this case.
 
 
 21
 The automobile exception permits a warrantless search not only at the spot where the automobile is stopped but also at the police station "soon thereafter" if the vehicle is impounded. Ross, 102 S.Ct. at 2163 n. 9 (citing Chambers v. Maroney, 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970), and Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975)). This extension of the automobile exception resulted, however, from the practical difficulties associated with the detention of an automobile on a public highway and the possible dangers of a search there. See Chambers v. Maroney, 399 U.S. at 52, 90 S.Ct. at 1981; Ross, 102 S.Ct. at 2163 n. 9, 2166 n. 18. Those considerations do not apply to a container that may be removed from the vehicle and secured by the police, as the Supreme Court held in Chadwick, 433 U.S. at 13 n. 7, 97 S.Ct. at 2484 n. 7.
 
 
 22
 Ross allows the police to search, either in the automobile or soon thereafter at the station, all containers, closed or open, which there is probable cause to believe may conceal the proper object of the search. Ross does not, however, overrule the holding of Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), that a warrant is needed for search of a closed container in the hands of the police that is not part of an automobile search itself. We therefore find nothing in Ross's expansion of the automobile search exception to justify extending it to containers no longer in an automobile and secured by the police for three days prior to a warrantless search.[4]
 
 
 23
 Moreover, nothing in the Ross decision so destroys the expectation of privacy in a container subject to an automobile search that the container is thereafter subject to search without a warrant. First, Ross allows the police to search all containers only if they have probable cause to search the vehicle. If there is probable cause to search only a container, the automobile exception does not apply. Ross did not overrule Chadwick or the holding in Sanders. See Ross, 102 S.Ct. at 2168 (quoting Robbins v. California, 453 U.S. at 435, 101 S.Ct. at 2850 (Powell, J., concurring)); Ross, 102 S.Ct. at 2172. Chadwick holds that placing a package in an automobile does not destroy the expectation of privacy in that package. Second, our decision in Burnette would never have reached the merits if the fact that the police could have (but did not) search a container forever destroys the expectation of privacy in its contents.
 
 
 24
 We again emphasize the factual basis of our holding. Customs officers had probable cause to believe the two trucks contained contraband. Under Ross, they could have immediately inspected the packages as part of the inspection of the trucks. The officers also could have searched the trucks and packages soon thereafter at their headquarters. Instead, they chose to seize and impound the packages. They stored the packages for three days and then opened them without a warrant.
 
 
 25
 The officers could have easily obtained a warrant at any time during those three days. Exceptions to the warrant requirement are limited and narrowly prescribed. Neither basis for the automobile exception--the impracticality of serving a warrant for the transportation of contraband, see Ross, 102 S.Ct. at 2163, and the special mobility of automobiles, id. at 2165--applies to packages secured for three days at a government warehouse.
 
 III. Standing
 
 26
 Unlike the other five defendants, whom the officers arrested at the airstrip, Johns and Hearron had departed in their airplanes a few minutes before the search of the vehicles and seizure of the containers of marijuana. The district court found that Johns and Hearron had standing to object to the search of the packages because they shared a bailor/bailee relationship with the other five defendants, who were not to be paid until after delivery of the marijuana. Moreover, the court found that the pilots had an interest in the packages sufficient to maintain a reasonable expectation of privacy in their contents.[5]
 
 
 27
 Unlike Rawlings v. Kentucky, 448 U.S. 98, 105, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980), this case does not involve a "precipitous" bailment to which the bailee had not consented. Johns and Hearron owned the drugs. United States v. Salvucci, 448 U.S. 83, 91, 100 S.Ct. 2547, 2552, 65 L.Ed.2d 619 (1980).[6] While the pilots lost their power to exclude others from inspecting the packages, that fact is not determinative under our precedent. United States v. Perez, 689 F.2d 1336, 1338 (9th Cir.1982) (per curiam).[7] Like the defendants in Perez, Johns and Hearron have met their burden of showing a reasonable expectation of privacy based on their formalized arrangement with the other five defendants for the transportation of the contraband. The pilots' interests in the packages when opened are indistinguishable from those of the other defendants. Id. The pilots have standing.
 
 CONCLUSION
 
 28
 The warrantless search here violated the Fourth Amendment and the district court correctly suppressed the evidence thus obtained. Although the containers were in plain view, the marijuana inside them was not. While Ross holds that the officers could have searched the packages, either on the spot or shortly thereafter, the automobile exception does not allow a warrantless search of containers seized and secured by the police for three days before the search. The rationale for the automobile exception to the warrant requirement then no longer applies. Finally, the district court correctly found that Johns and Hearron had standing.
 
 
 29
 AFFIRMED.
 
 
 
 [1]
 The government also argued that the wrapped containers were "mere cargo," to which no Fourth Amendment privacy interests attached. Distinctions based on the likelihood that a particular closed, opaque container contains personal effects are no longer permissible. See United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 2171, 72 L.Ed.2d 572 (1982). Since Ross, we no longer need distinguish between "worthy" and "unworthy" containers
 
 
 [2]
 We decline to hold that the contents of the wrapped bales were in plain view as "containers (for example a kit of burglar tools or a gun case) [which] by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance." Ross, 102 S.Ct. at 2167 n. 19 (quoting Arkansas v. Sanders, 442 U.S. 753, 764 n. 13, 99 S.Ct. 2586, 2593 n. 13, 61 L.Ed.2d 235 (1979)). See also Robbins v. California, 453 U.S. 420, 427-28, 101 S.Ct. 2841, 2846-47, 69 L.Ed.2d 744 (1981). The wrapped bales here did not announce their contents with sufficient clarity to eliminate the need for a warrant. The government implicitly recognized that fact in the district court. At the reopened hearing on the motion to suppress, a government witness testified that the packages were torn, exposing the marijuana to plain view and obviating the necessity of opening the packages to remove samples. The trial court found this strikingly new testimony to be not credible
 Nor can we say that the viewing of the packages by the agents in this case was "inadvertent," as required for application of the plain view doctrine by the plurality opinion in Coolidge v. New Hampshire, 403 U.S. 443, 470, 91 S.Ct. 2022, 2040, 29 L.Ed.2d 564 (1971). We do not rest our decision on this ground because it is uncertain whether the "inadvertence" requirement survived Texas v. Brown, --- U.S. ----, ----, 103 S.Ct. 1535, 1542-44, 75 L.Ed.2d 502 (1983) (plurality opinion of Rehnquist, J.; concurring opinion of White, J.).
 
 
 [3]
 Thus, most of our cases turn on whether the automobile exception, as then defined, applied to the searches of the containers. See, e.g., United States v. Solomon, 528 F.2d 88 (9th Cir.1975); United States v. Gibbs, 435 F.2d 621 (9th Cir.1970), cert. denied, 401 U.S. 994, 91 S.Ct. 1233, 28 L.Ed.2d 532 (1971)
 The Second Circuit also has rejected the view that a distinctive odor can bring the contents of a container into plain view. United States v. Dien, 609 F.2d 1038, 1045 (2d Cir.1979). See also United States v. Johnson, 588 F.2d 147 (5th Cir.1979). While the results in Dien and Johnson would be different now after Ross, that does not affect their analysis of whether the odor of marijuana in the vehicle brings the contents of the packages into plain view.
 
 
 [4]
 See, e.g., United States v. Cleary, 656 F.2d 1302, 1303 (9th Cir.1981), vacated, --- U.S. ----, 102 S.Ct. 2919, 73 L.Ed.2d 1324, on remand, 683 F.2d 313 (9th Cir.1982) (search apparently occurred immediately after bag taken to police station and therefore was part of search of van)
 
 
 [5]
 The government does not challenge the standing of the other five defendants to object to the search
 
 
 [6]
 After its acquiescence at the suppression hearing, the government cannot now contend that the record does not show that Johns and Hearron had any continuing interest in the marijuana. See Steagald v. United States, 451 U.S. 204, 209, 101 S.Ct. 1642, 1646, 68 L.Ed.2d 38 (1981); United States v. Anderson, 663 F.2d 934, 938-39 n. 4 (9th Cir.1981)
 
 
 [7]
 But see United States v. DeLeon, 641 F.2d 330, 337 (5th Cir.1981) (no expectation of privacy in articles committed to the custody of coconspirators)