UNITED STATES of America,
Plaintiff-Appellee,

v.

Ernest ESTRADA, Jr., Tony F. Estrada,
and George Gorman,
Defendants-Appellants.

Nos. 83–1277, 83–1313 and 83–1318.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 14, 1984.

Decided May 17, 1984.

Eric A. Fisher, Asst. U.S. Atty., San Jose, Cal., for plaintiff-appellee.

Michael Nichols A., Nichols & Nichols, Sunnyvale, Cal., Frank S. Taranto, Campbell, Cal., Peter F. Goldscheider, Palo Alto, Cal., for defendants-appellants.

Before WRIGHT, HUG, and NELSON, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Delgado, a San Jose police officer, received a confidential tip that appellants were manufacturing PCP (phencylidine). He corroborated some of the information and obtained a warrant to search the houses of Ernest and Tony Estrada. The police found PCP, precursor chemicals, and manufacturing equipment at Ernest's house.

Appellants challenge the sufficiency and accuracy of the affidavit used to obtain the warrant. We affirm.

FACTS

Delgado was assigned to the federal narcotics task force in Santa Clara County. He met a confidential informant, Charles Corey, who agreed to provide information in return for Delgado's promise to write the sentencing judge in a state prosecution.

Corey said that he had made PCP with appellants in the past and that they were planning to make more in the near future. He supplied corroborating details, including the chemicals used in the manufacture of PCP and the correct addresses and telephone numbers of the Estradas. These details were verified by the police. Corey told Delgado that they planned to purchase chemicals and glassware from the "Science Shop" in San Jose.

Police observed Corey and unidentified persons arrive at the Science Shop at the time and in the manner Corey had indicated, purchase supplies, and take them to Tony Estrada's house. All appellants were present. The police later observed some of the materials being taken to Ernest Estrada's house.

The affidavit recounted the above activities, describing Corey as "X" to preserve his confidentiality. Although the affidavit described "X"'s personal involvement in appellant's PCP manufacturing activities, it did not state that he was at the Science Shop, nor that appellants were not present. Delgado explained at the suppression hearing that he thought Corey's life would be endangered if his identity were revealed.

The district court denied appellants' motion to suppress. They pleaded guilty, reserving the right to appeal the constitutionality of the search.

ANALYSIS

I. *Sufficiency of the Affidavit*

A. *Standard of Review*

■ We apply a narrow standard of review to a magistrate's decision to issue a search warrant. *United States v. Flores*, 679 F.2d 173, 176 (9th Cir.1982), *cert. denied*, 459 U.S. 1148, 103 S.Ct. 791, 74 L.Ed.2d 996 (1983). "[T]he duty of a reviewing court is simply to insure that a magistrate had a substantial basis for ... conclud[ing] that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *United States v. Seybold*, 726 F.2d 502, 503 (9th Cir.1984). This "substantial basis" standard requires the reviewing court to show great deference to the magistrate's determination. *Seybold*, at 503. We may not reverse unless it is clearly erroneous. *Id.* at 503.

B. *The Retroactivity of Gates*

The *Gates* Court held that sufficiency of an affidavit that relies on a confidential informant depends on "the totality of the circumstances." 103 S.Ct. at 2332. It abandoned the rigid application of the "two-pronged test" established by *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

The searches of the Estradas' residences took place prior to the *Gates* decision. Appellants contend that *Gates* should not be applied retroactively.

We have not yet decided this question. *Compare United States v. Landis*, 726 F.2d 540 at 541 (9th Cir.1984) (applying *Gates* to prior search without discussing retroactivity question); *United States v. Seybold, supra*, 726 F.2d at 503 (same); *with United States v. $93,685.61 in United*

*States Currency,* 730 F.2d 571 at 572 (9th Cir.1984) (retroactivity of *Gates* remains open question). The Fifth Circuit has held that *Gates* applies to all decisions arising on direct review when *Gates* was decided. *United States v. Mendoza,* 727 F.2d 448 at 449 (5th Cir.1984).

■ We agree. "As a rule, judicial decisions apply 'retroactively.'" *Solem v. Stumes,* — U.S. —, —, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984). Any exceptions to this general principle must find their source in the "interest of justice" or "the exigencies of the situation." *Id.*

We have never denied retroactive application to a new decision that *limits* the Fourth Amendment's exclusionary rule. We have held, for example, that the warrantless automobile container search rule announced in *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1981), applies retroactively. *United States v. Johns,* 707 F.2d 1093 (9th Cir. 1983), *petition for cert. filed,* 52 U.S.L.W. 3777 (U.S. April 24, 1984). *Accord United States v. Freire,* 710 F.2d 1515 (11th Cir. 1983), *cert. denied,* — U.S. —, 104 S.Ct. 1277, 79 L.Ed.2d 681 (1984); *United States v. Burns,* 684 F.2d 1066, 1074 (2d Cir.1982), *cert. denied,* 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983).

These cases indicate that decisions limiting the exclusionary rule are fully retroactive.

> No other result makes sense. The purpose of refusing to apply retroactively a new decision enforcing the exclusionary rule is to avoid penalizing police conduct when the police reasonably relied on existing judicial precedent. [cites] When a court determines that a particular police practice does *not* violate the Constitution, there is no reason not to apply that decision retroactively.

*Johns,* 707 F.2d at 1097.

■ A participant in illegal activities cannot legitimately expect to order his affairs in reliance on prior judicial interpretations of the exclusionary rule. *Ross,* 456

U.S. at 824 & n. 33, 102 S.Ct. at 2172 & n. 33; *Mendoza, supra,* 727 F.2d at 449.

■ Similarly, the administration of justice is benefited by giving retroactive application to a new decision limiting the exclusionary rule. The costs of that rule are justified by its deterrent effect on illegal police conduct. *Stone v. Powell,* 428 U.S. 465, 486, 96 S.Ct. 3037, 3048, 49 L.Ed.2d 1067 (1976); *United States v. Janis,* 428 U.S. 433, 446, 96 S.Ct. 3021, 3028, 49 L.Ed.2d 1046 (1976). When a subsequent decision holds the police conduct reasonable, the rationale for exclusion disappears. *Johns,* 707 F.2d at 1097.

### C. *Sufficiency of the Affidavit*

■ The *Gates* court rejected the notion that probable cause can be "reduced to a neat set of legal rules." 103 S.Ct. at 2328. It concluded that probable cause is a fluid concept which depends upon the "totality of the circumstances." 103 S.Ct. at 2328. It stated:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* at 2332.

Although *Gates* rejected the rigid application of the *Aguilar-Spinelli* "two-pronged" test, the factors considered in that test remain highly relevant to the probable cause determination. 103 S.Ct. at 2327–28.

The *Aguilar-Spinelli* test required the affidavit to inform the magistrate of "(1) some of the underlying circumstances from which the informant drew his conclusions and (2) some of the underlying circumstances from which the officer concluded that the informer was credible or that his information was reliable." *United States v. One 56-Foot Yacht Named Tahuna,* 702 F.2d 1276, 1284 (9th Cir.1983) (*Tahuna* ).

Under *Gates,* the informant's "veracity," "reliability," and "basis of knowledge" are

weighed together with any other evidence that supports the finding of probable cause. They are viewed cumulatively, not as independent links in a chain. *See Landis, supra,* 726 F.2d at 541.

The affidavit contained abundant evidence of the basis of "X"'s knowledge. "X" admitted to extensive involvement in the criminal scheme with appellants and based his statements on personal knowledge and observation. "X" stated that he saw Gorman "cook" a quantity of PCP in Ernest Estrada's residence the night before the search warrant was obtained. These observations satisfy the first prong of the *Aguilar-Spinelli* test. *See Tahuna,* 702 F.2d at 1284.

The affidavit also satisfies the "credibility" and "reliability" prong of the *Aguilar-Spinelli* test. "A detailed eye-witness report of a crime is self-corroborating; it supplies its own indicia of reliability." *United States v. Banks,* 539 F.2d 14, 17 (9th Cir.), *cert. denied,* 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976).

"X"'s reliability was also tested by the many corroborating details that he supplied to the police. In particular, his description of the time and manner that the transaction at the "Science Shop" would take place indicated his detailed knowledge of the appellants' affairs. Finally, "X"'s statements about past and present involvement in the manufacture of PCP with appellants constituted admissions against his penal interest. "Admissions of crimes ... carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search." *United States v. Harris,* 403 U.S. 573, 583, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723 (1971); *Tahuna,* 702 F.2d at 1284.

We hold that the affidavit was sufficient.

## II. *Omissions or Misrepresentations in the Affidavit*

 Appellants argue that the affidavit contained material omissions and false statements that negate its facial showing of probable cause. *See Franks v. Dela-ware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

In *Franks,* the Supreme Court held that a defendant could challenge a facially valid affidavit by showing that "(1) the affidavit contains intentionally or recklessly false statements, and (2) the affidavit purged of its falsities would not be sufficient to support a finding of probable cause." *United States v. Lefkowitz,* 618 F.2d 1313, 1317 (9th Cir.), *cert. denied,* 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 27 (1980).

After a hearing, the district court concluded that appellants met neither prong of the *Franks* test. We agree.

First, the alleged "misrepresentations" and "omissions" were not the sort of "intentional" or "recklessly false" statements that *Franks* prohibits. *See* 438 U.S. at 171, 98 S.Ct. at 2684. *Cf. Lefkowitz,* 618 F.2d at 1317 n. 3 (open question whether *Franks* permits attacks on "affidavits marred by *omissions* of facts.").

Second, the appellants' allegations do not undermine the sufficiency of the affidavit. Probable cause existed even if the "misrepresentations" and "omissions" were cured. *See Lefkowitz,* 618 F.2d at 1317; *United States v. Taxe,* 540 F.2d 961, 967 (9th Cir. 1976), *cert. denied,* 429 U.S. 1040, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977). *Cf. United States v. Esparza,* 546 F.2d 841, 844 (9th Cir.1976) (misrepresentations were critical to finding of probable cause).

## CONCLUSION

We hold there was probable cause to search the Estradas' residences. Because the searches were legal, we do not reach the government's claim that Gorman lacked a legitimate expectation of privacy in the areas searched.

AFFIRMED. The mandate will issue now.