**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Daniel Marcus MILLER,
Defendant-Appellant.**

·No. 84–1131.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 15, 1984.

Decided Feb. 20, 1985.

As Amended May 9, 1985.

Thomas E. Flynn, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee.

Diana Samuelson, San Francisco, Cal., for defendant-appellant.

Before SCHROEDER, FLETCHER, and CANBY, Circuit Judges.

PER CURIAM:

Miller appeals his conviction for manufacturing controlled substances, challenging a search of his property by federal agents. The district court denied Miller's suppression motions, and we affirm.

## I. BACKGROUND

On June 23, 1983, agents of the Bureau of Alcohol, Tobacco and Firearms ("ATF") and the Drug Enforcement Agency ("DEA") searched Miller's property, a forty-one acre ranch known as "Cow Bell Mines," pursuant to a federal warrant. They discovered evidence of a methamphetamine laboratory concealed under a garage. They also found three handguns, one equipped with a silencer, in the laboratory. The laboratory apparently had not been used for some time, but the odor characteristic of such laboratories was still very powerful.

Based on the evidence seized in the search, Miller was arrested and charged under a five-count indictment with manufacture of controlled substances, 21 U.S.C. § 841(a)(1) (1982), and possession of firearms by a prohibited person, 18 U.S.C.App. § 1202(a)(1) (1982).

In the trial court, Miller moved to suppress the evidence seized in the June 23 search. He alleged that the warrant was not supported by probable cause and that the federal agents had lied or deliberately disregarded the truth in the affidavit filed in support of the warrant. The district court conducted an evidentiary hearing concerning Miller's allegations of falsehoods. After careful consideration, the court denied Miller's suppression motions. Miller then pleaded guilty to two counts of the indictment under Fed.R.Crim.P. 11(a)(2). The prosecution dropped the other charges.

## II. DISCUSSION

### A. *Reckless Disregard Under* Franks

Miller contends that the federal agents lied or deliberately disregarded the truth in

the affidavit filed in support of the search warrant. *See Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). His challenge arises from statements in the affidavit attributed to a confidential informant (designated as CRI(2) in the affidavit).

The affidavit disclosed that CRI(2) had spoken to AFT Agent Dower and DEA Agent Gregory on June 16, 1983. CRI(2) stated that he had observed the Cow Bell Mines property almost daily over a thirty-day period ending June 6, 1983. CRI(2) saw three men and two women on the property. On numerous occasions, CRI(2) saw the men carrying firearms. CRI(2) observed two of the men inject a substance into their arms which CRI(2) believed to be methamphetamine. CRI(2) detected odors near the property, which he knew from prior experience to be associated with the manufacture of methamphetamine. CRI(2) also encountered "trip wires" on or near the property. Finally, CRI(2) identified Miller, his wife, and the Cow Bell Mines property from photographs given to him by the federal agents.

After his arrest, Miller discovered that the person identified as CRI(2) in the affidavit was Michael Becker. He obtained a sworn statement in which Becker denied relating any of the information attributed to him in the affidavit. On the basis of this statement, the district court granted Miller's motion for a *Franks* hearing.

At the hearing, Becker again denied providing the information attributed to him in the affidavit. Other evidence showed that Becker was arrested by county authorities on June 7, 1983, and was held in connection with investigation of possession of a stolen vehicle, stolen credit cards, an illegal weapon, and a stolen license plate. County officers interviewed approximately fifteen persons in connection with this investigation. One of the persons interviewed told officers that Becker had shot his own dog in the face with a shotgun and that Becker was mentally unstable. Another person

told officers that Becker was crazy and had threatened him with a shotgun. The evidence concerning these alleged incidents was very sketchy.

County officers obtained a teletype report from Oregon authorities indicating that Becker had been serving a five-year sentence for illegal possession of a firearm and for escaping from an Oregon penitentiary. County officers also obtained a California "rap sheet" detailing other convictions.

County officers told agents Dower and Gregory that Becker was a fugitive from Oregon who had been convicted of narcotics and firearms violations. They also told Dower and Gregory about the charges for which Becker had been arrested, but they did not mention the reports that Becker had been acting strangely or that some people considered him mentally unstable. The federal agents did not make any background checks on Becker.

It also came out in the *Franks* hearing that Becker was convicted of perjury in Oregon in 1981. Neither the Oregon teletype nor the California rap sheet mentioned the perjury conviction. Neither federal nor county officers were aware of it until the *Franks* hearing.

Miller contends that federal officers Bertolani (the affiant), Dower, and Gregory exhibited reckless disregard for the truth in several respects: (1) they failed to discover that Becker had been convicted of perjury; (2) they did not ask county officers about the circumstances of Becker's arrest and therefore did not learn of Becker's "bizarre" behavior as described by witnesses who were interviewed; and (3) they did not review Becker's rap sheet.[1]

In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that a defendant could challenge a facially valid search warrant if he showed that (1) the affidavit contained intentionally or recklessly false statements, and (2) the affidavit purged of its falsities

---

1. Miller also alleges reckless disregard in that the affidavit did not state the specific location where Becker said he smelled the methampheta-

mine odors. This allegation essentially goes to whether the warrant was overbroad, discussed in Part C, *infra*.

would not be sufficient to support a finding of probable cause. *Id.* at 171–72, 98 S.Ct. at 2684–2685. The district court concluded that Miller failed to satisfy the first prong of the *Franks* test. Applying de novo review, this conclusion was not clearly erroneous. *See United States v. Ritter,* 752 F.2d 435, 439 (9th Cir.1985) (applying *United States v. McConney,* 728 F.2d 1195 (9th Cir.) (en banc), cert. denied, —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984), and reviewing this issue under the clearly erroneous standard of review).

*Franks* requires that a defendant show intentional falsehoods or reckless disregard for the truth. "Allegations of negligence or innocent mistake are insufficient." *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684; *accord United States v. Davis,* 714 F.2d 896, 899 n. 5 (9th Cir.1983); *United States v. Carlson,* 697 F.2d 231, 238 (8th Cir.1983); *see United States v. Hole,* 564 F.2d 298, 302 (9th Cir.1977) (pre-*Franks* case).

We agree with the district court that Miller's allegations amount to no more than negligence. It might have been prudent for the federal agents to check on Becker's background and criminal record, but their failure to do so is not reckless disregard. The federal agents knew of the charges for which Becker was being held, and they knew of his Oregon narcotics and firearms convictions. They observed Becker's demeanor and behavior during the interview and testified that he appeared rational and coherent.

The linchpin of Miller's challenge is Becker's perjury conviction. But none of the officers, county or federal, was aware of the perjury conviction until the day the *Franks* hearing was held. It was not mentioned in the California rap sheet nor in the teletype from Oregon. The officers made diligent efforts to find out about Becker's background. Their failure to uncover the perjury conviction can be considered no more than negligence, if that.[2]

**B. Sufficiency of the Affidavit to Show Probable Cause**

Miller also contends that the affidavit was insufficient to support the magistrate's finding of probable cause to search.

In addition to Becker's statements, the affidavit contained information concerning a search of Miller's property two years earlier, in November 1981, and information received after the 1981 search from an unnamed informant (designated as CRI(1)) and another individual.

In 1981, ATF agents first received information that a methamphetamine laboratory was being operated on Miller's property. In November of that year, they searched the property pursuant to a federal warrant. The agents did not find any laboratory, but they did find firearms and small quantities of methamphetamine. Miller was convicted of a felony, possession of a firearm by a prohibited person.

Sometime subsequent to the execution of the warrant CRI(1) told the affiant that Miller had said the "Feds" missed the laboratory on the Cow Bell Mines property during the November 1981 search. In the summer of 1982, CRI(1) also said he had learned in conversations with members of the Hells Angels Motorcycle Club [3] that Miller was seeking chemicals to manufac-

---

**2.** In light of our conclusion that Miller has not shown deliberate falsehoods or reckless disregard, we need not address the related issues of whether a defendant may challenge the veracity of officers upon whom the affiant has relied, *see generally* 2 W. LaFave, Search and Seizure § 4.4, at 64 (1978); *cf. Davis,* 714 F.2d at 900, and whether a defendant may challenge omis-

sions as well as misstatements, *see United States v. Estrada,* 733 F.2d 683, 686 (9th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 168, 194, 83 L.Ed.2d 103, 127 (1984); *see generally* 2 W. LaFave, *supra,* § 4.4, at 18–19 (1984 Supp.).

**3.** Miller was a former member of the Hells Angels.

ture methamphetamine. In late 1982, CRI(1) said that Miller's lab was underground and that Miller was working with another Hell's Angel, Kenneth Owen, in the operation. Within the three months preceding the date of the application for the search warrant, CRI(1) said the lab was still in operation.

The affiant also received information from Sergey Clement Walton, another Hell's Angel. Walton was arrested in May 1981, and evidence uncovered during that arrest led to the November 1981 search of the Cow Bell Mines property. After the search, Walton stated that he had learned from Laufey Gayle Owen (Kenneth Owen's wife) that the federal agents had missed the methamphetamine laboratory on Miller's property and that the lab was underground.

In a carefully reasoned memorandum order, the trial court concluded that without Becker's statements, the other information in the warrant would be insufficient to support a finding of probable cause. The court went on to conclude, however, that Becker's reliability had been established under the "totality of the circumstances." The court therefore upheld the warrant. Once again, we agree.

▮ When issuing a search warrant, a magistrate's task is "simply to make a common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Our duty is "to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." 103 S.Ct. at 2332 (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). *Accord United States v. Estrada,* 733 F.2d 683, 684 (9th Cir.), *cert.*

denied, —— U.S. ——, 105 S.Ct. 194, 83 L.Ed.2d 127 (1984); *United States v. Seybold,* 726 F.2d 502, 503 (9th Cir.1984); *United States v. Mendez-Jimenez,* 709 F.2d 1300, 1302 (9th Cir.1983). We are not to engage in de novo review. *Massachusetts v. Upton,* —— U.S. ——, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984); *Gates,* 103 S.Ct. at 2331. Like the magistrate who issued the warrant, we must consider the "totality of the circumstances." *Upton,* 104 S.Ct. at 2088; *Gates,* 103 S.Ct. at 2332.

▮ Here, the element that is crucial to the warrant's sufficiency is Becker's reliability. *Gates* teaches that when examining information provided by an informant, the two-prong *Aguilar-Spinelli* test, *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), is "highly relevant" in determining the value of the information. *Gates,* 103 S.Ct. at 2327. However, the "veracity" and "basis of knowledge" inquiries should be applied in a common-sense, practical manner, not in a rigid or technical fashion. *Id.* at 2327–28; *Estrada,* 733 F.2d at 685.

The affidavit provided the following as indicia of Becker's reliability:

CRI(2) has: (A) provided information contrary to his own penal interest in current state felony charges that have been filed against him, (b) stated that the CRI(2) knows about firearms and has described firearms and their functions in detail to the satisfaction of Agent Dower (ATF), (C) stated that the CRI(2) has previously used methamphetamine and has served as a "guard" at a clandestine methamphetamine laboratory, (D) has described odors and laboratory equipment associated with clandestine methamphetamine laboratories to Special Agent Gregory (DEA) that are consistent with [Gregory's] past experience with at least twelve clandestine methamphetamine laboratory investigations, and (E) provided Special Agent Gregory (DEA) with independent intelligence information on

the diversion of precursor chemicals which [Gregory] knows to be true through investigative activity in a separate investigation of another methamphetamine laboratory.

■ The district court rejected the contention that Becker's statements could be credited because they were against his penal interest. Because the affidavit does not show any nexus between Becker's statements and the criminal activity occurring on Miller's property, we agree. *See* 1 W. LaFave, *supra,* § 3.3, at 530–31.[4]

■ The district court also discredited the suggestion that Becker was reliable because he had "provided [Agent Gregory] with independent intelligence information on the diversion of precursor chemicals which [Gregory] knows to be true through investigative activity in a separate investigation of another methamphetamine laboratory." This statement is both unclear and conclusory. There is no showing that Becker's information led to any search, arrest, or conviction, nor whether it was important or incidental to Gregory's independent investigation. This allegation of reliability is entitled to only slight weight. *See United States v. Freitas,* 716 F.2d 1216, 1222 (9th Cir.1983).

■ Nonetheless, Becker's reliability and the basis for his knowledge were established by the other averments contained in the affidavit. First, Becker provided accurate and relatively detailed descriptions of weapons and the odor of methamphetamine. *See Gates,* 103 S.Ct. at 2329–30; *United States v. Henderson,* 721 F.2d 662, 665 n. 1 (9th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 2665, 81 L.Ed.2d 370 (1984). His information was based on personal observation, *see United States v. Landis,* 726 F.2d 540, 543 (9th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 2688, 81

L.Ed.2d 882 (1984); *United States v. Ordonez,* 722 F.2d 530, 542 (9th Cir.1983), *reh'g denied & opinion amended on other grounds,* 737 F.2d 792 & 793 (9th Cir.1984), and was corroborated by information officers had received from other informants (CRI(1) and Walton); *see Landis,* 726 F.2d at 543; *United States v. Weinrich,* 586 F.2d 481, 490 (5th Cir.1978), *cert. denied,* 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 243, 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979). Becker's identification of the property from an aerial photograph and his accurate description of the property as personally known to agents Dower and Gregory further supports the finding of probable cause. As the Supreme Court has stated, " 'Because an informant is right about some things, he is more probably right about other facts,' ... including the claim regarding the [defendant's] illegal activity." *Gates,* 103 S.Ct. at 2335 (quoting *Spinelli,* 393 U.S. at 427, 89 S.Ct. at 594 (White, J., concurring)).

■ Miller contends all this merely shows that Becker had been on the Cow Bell Mines property, but does not show that Becker was being truthful. *Gates* makes clear that the two prongs of the old *Aguilar-Spinelli* test are intertwined; "a deficiency in one may be compensated for ... by a strong showing as to the other." *Gates,* 103 S.Ct. at 2329. Here, the magistrate could have concluded the relatively weak showing of veracity was made up for by a relatively strong showing of the basis of Becker's knowledge.

The trial court noted "how very thin this case is" and went on to state that it was troubled by "the absolute failure of law enforcement agents to do anything relevant on their own to corroborate the statements of [Becker]." We too are troubled by this. Independent police verification of an informant's information was considered

---

4. The only incriminating statement Becker apparently made was that he possessed a sawed-off shotgun. But this had no relation to the information he supplied about the Cow Bell Mines property. There does not appear to be anything criminal about his statements concerning the property.

very important to the finding of probable cause in *Gates*, 103 S.Ct. at 2335–36, as it has been in other cases, *see, e.g., United States v. Camp*, 723 F.2d 741, 745 (9th Cir.1984); *Ordonez*, 722 F.2d at 542; *Freitas*, 716 F.2d at 1223–24; *United States v. Bernard*, 623 F.2d 551, 559–60 (9th Cir. 1979). Independent verification could have been easily accomplished in this case. An officer could have ascertained whether Becker was telling the truth simply by observing the property with a pair of binoculars.

Even though the officers failed to take these simple steps, we must conclude, as the district court did, that the affidavit taken as a whole provided the magistrate a substantial basis for concluding that there was a fair probability that guns and evidence of a methamphetamine laboratory would be found on Miller's property.

### C. Overbreadth of the Warrant

Finally, Miller challenges the search authorized by the warrant as overbroad. The warrant authorized a search of Miller's property, "consisting of the residence of Daniel Marcus Miller which is a one-story brown wooden frame structure, ... a single story brown and red wood frame building, a warehouse, garage, outbuildings, appurtenances and mines on 41.3 acres ...."

"[T]he scope of the warrant to search is dependent upon the extent of the showing of probable cause." *United States v. Whitney*, 633 F.2d 902, 907 (9th Cir.1980) (quoting *United States v. Hinton*, 219 F.2d 324, 325 (7th Cir.1955)), *cert. denied*, 450 U.S. 1004, 101 S.Ct. 1717, 68 L.Ed.2d 208 (1981). Miller does not specify why probable cause did not exist to search all the buildings on the property, except that he suggests that since Becker smelled the methamphetamine odors near the garage, probable cause existed to search only that building.

Miller owned the entire 41.3 acres, and the evidence does not show that he did not exercise dominion and control over the whole of the property. There is no reason to believe that guns and evidence of methamphetamine production would be found only in or around the garage. Because it appears that Miller was in control of the entire premises and the entire premises were suspect, the warrant does not appear to be overbroad. *See United States v. Whitten*, 706 F.2d 1000, 1008 (9th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984); *Whitney*, 633 F.2d at 907 n. 3.

Moreover, the evidence Miller apparently seeks to suppress was found in the laboratory under the garage. If Miller is arguing that probable cause existed to search only the garage, his argument necessarily must fail, because that is where the incriminating evidence was found.

### III. CONCLUSION

We conclude that Miller has failed to show the officers exhibited reckless disregard for the truth in the affidavit in support of the warrant. We further conclude that the warrant as a whole was supported by probable cause and was not overbroad. Accordingly, the judgment of the district court is

AFFIRMED.