15 F.3d 1093
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Clemente Perez LUNA, also known as Jose Carlos Taloas
Arellano, Defendant-Appellant,
 No. 92-10185.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 30, 1993.
Decided Dec. 14, 1993.
 
 Before: REAVLEY,*, PREGERSON and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Following conviction for conspiracy to possess and possession of cocaine with intent to distribute, Clemente Perez-Luna was sentenced to life in prison without parole. We affirm for the following reasons.
 
 
 3
 1. Luna's principal complaint is the inadmissibility of evidence obtained as fruit of an arrest without probable cause.
 
 
 4
 On July 3, 1990, the San Francisco police set up a buy operation to bust a cocaine distribution ring. After making several arrests, through which the officers gleaned additional information, the police arrested a courier (the Informant) at 10:30 p.m. After about forty-five minutes, the courier agreed to trade the only asset he had for his freedom: information.
 
 
 5
 The Informant told Officer Martinovich that as a courier, his job was to pick up and deliver drug-sale proceeds for Clemente Perez-Luna and Victor Arroyo. He said that Luna was the head of the drug organization, while Arroyo's role was to store and deliver the cocaine. He divulged that Luna and Arroyo were the source of the cocaine confiscated by the police in the earlier drug busts that day. The Informant gave a detailed description of both Luna and Arroyo, including age, height, weight, ethnicity, and dress (Luna would be better dressed than Arroyo). He said that Luna stored cocaine and cash at apartment 265 on 1169 Market Street, and he gave a detailed description of the building. He recalled that on a recent visit to the apartment, he saw cocaine and large amounts of cash; the cocaine was in one suitcase, and the cash in another. He said Luna also stashed cocaine at 321 Roanoke. He opined that Luna would be using an alias because he had an outstanding felony arrest warrant in Los Angeles or southern California and stated that Arroyo had a criminal history for drug violations in San Francisco.
 
 
 6
 The Informant told the officers that Luna and Arroyo were at the apartment on Market Street. He said a gray mini-van and a gold cadillac would be parked at the apartment building. The mini-van, which had a "San Clemente" license plate frame, was Luna's and the gold cadillac was Arroyo's. He told the officers that Luna and Arroyo would be leaving in Luna's gray mini-van for the San Francisco airport around midnight, although they might be delayed because they were waiting for the Informant to deliver drug-sale proceeds.
 
 
 7
 After receiving this information, the officers began verifying the tip. Officer Martinovich drove the Informant past 321 Roanoke to make sure it was not a fictitious address. The police searched the criminal records for "Victor Arroyo" and found two individuals by that name, both having drug-related criminal histories in San Francisco. They also attempted to discover Luna's outstanding arrest warrant by searching for the name "Clemente Perez" (the only name known to the officers at the time), but they did not find the warrant until after the arrest when a computer search was run under the name "Clemente Perez-Luna."
 
 
 8
 When the officers arrived at 1169 Market Street, they saw a gold cadillac and a gray mini-van with a "San Clemente" license place frame. They ran a check on the mini-van and found it was registered under the name "Jose C. Tolas Ariano" at 321 Roanoke, the same address given by the Informant. At about 1:15 a.m., the officers observed two men matching the Informant's description leaving the apartment building and getting into the gray mini-van. After following the suspects to the airport, the officers arrested Luna and Arroyo. The police took keys from Luna to the 1169 Market Street apartment. And, after obtaining a search warrant, they searched the apartment and found large amounts of cocaine and cash. They also found a large quantity of cocaine at the Roanoke address.
 
 
 9
 While information from an untested informant, standing alone, is insufficient for probable cause, it can rise to the level of probable cause when supplemented by sufficient corroboration through independent police work. Illinois v. Gates, 462 U.S. 213, 244-44 (1983). And, statements against penal interest add to the informant's indicia of reliability, because individuals do not blithely admit to criminal activity. United States v. Dozier, 844 F.2d 701, 706-07 (9th Cir.), cert. denied, 488 U.S. 927 (1988).
 
 
 10
 During the brief period of time between when the Informant gave the officers the information (11:15 p.m.) and the time Luna and Arroyo left the apartment (1:15 a.m.), the officers corroborated a significant portion of the Informant's story. The officers verified the existence and description of the Market Street address and the Roanoke address. They found that a "Victor arroyo" had a drug-related criminal background in San Francisco. They saw the gray mini-van, with the "San Clemente" license plate frame, and the gold cadillac parked in front of the apartment building on Market Street. They found that while the mini-van was not registered under Luna's name, it was registered to the 321 Roanoke address, adding credibility to the Informant's statement that Luna would be using an alias. And, they observed two individuals matching the Informant's description leaving the apartment building, entering the mini-van, and driving to the San Francisco airport, just as the Informant predicted.
 
 
 11
 In Illinois v. Gates, the Supreme Court highlighted the significance of an informant's ability to predict the future activity of third parties. 462 U.S. at 245. The fact that the Informant knew Luna and Arroyo would get in the mini-van and drive to the San Francisco airport suggests that he also had access to reliable information concerning Luna' and Arroyo's illegal activities. See id. The Gates Court also underscored the importance of detailed information:
 
 
 12
 [E]ven if we entertain some doubt as to an Informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight then might otherwise be the case.
 
 
 13
 Id. at 234. Here, the credibility of the Informant is bolstered by his description of the cocaine-distribution hierarchy and his statement that he saw large amounts of cocaine and case in the Market Street apartment.
 
 
 14
 The Informant's admission to being a participant in the cocaine-distribution ring--a statement against his penal interest--adds further credibility to his story. See e.g. United States v. Estrada, 733 F.2d 683, 686 (9th Cir.), cert. denied, 469 U.S. 850 (1984). While the Informant's admission occurred after his arrest, it still buttresses the reliability of his information. "[E]ven after arrest '[p]eople do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions.' " Dozier, 844 F.2d at 707 (quoting United States v. Harris, 403 U.S. 573, 583 (1971)).
 
 
 15
 In Dozier, this court found probable cause for a warrantless search based upon a tip from an untested informant and the police officers' independent corroboration of that information. Dozier, 844 F.2d at 707. We considered the untested informant to be credible because he made an admission against his penal interest, after arrest, which implicated the informant at the same time it implicated Dozier. Id. Here, the Informant's admission implicated the Informant at the same time it implicated Luna.
 
 
 16
 This is not a case where the police arrested Lune and Arroyo based solely upon the verification of innocent facts and the observation of non-suspicious activity. Instead, the officers' decision to arrest Luna and Arroyo was based upon the Informant's prediction of Luna's and Arroyo's future activities, the Informant's personal observation of cocaine in the Market Street apartment, the Informant's statement against his penal interest, and the officers' independent verification of a significant portion of the Informant's information. Considering the totality of the circumstances, we conclude that these facts are sufficient to establish probable cause.
 
 
 17
 2. There was no error in admitting the testimony of the handwriting expert. A proper predicate was laid, and no improper prejudice is shown.
 
 
 18
 3. We have carefully examined the prosecutor's statements that Luna claims were prejudicial. All of the statements were reasonable inferences drawn from the evidence except one, where the prosecutor was a bit confused. After Luna's attorney objected, the prosecutor addressed the jury and responded "If I am misciting the evidence, you, as jurors, can focus on what the evidence is. If I did, I don't mean to." After argument, the court instructed the jury to consider only the evidence. We consider both of these statements to have effectively neutralized any prejudice Luna may have suffered from the statement.
 
 
 19
 4. No error was committed in sentencing.
 
 
 20
 a. The government bears the burden to prove a prior conviction, and the defendant bears the burden to prove the conviction was unconstitutionally obtained. Luna's contention that he did not waive constitutional rights because he did not understand English was a fact for him to prove. The evidence warranted the judge's finding that Luna failed to carry that burden.
 
 
 21
 b. The fact that possession of 2 grams of cocaine is not a Federal felony is immaterial. The prior conviction was a drug-related state felony conviction. Therefore, it was properly included in the enhancement calculation by the terms of 21 U.S.C. Sec. 841(b)(1)(A).
 
 
 22
 c. Again, the prior conviction supported the enhancement, the sentence being primarily the consequence of the possession and distribution of over 5000 grams of cocaine. The sentence of life without parole did not constitute an Eighth Amendment violation. See e.g., Harmelin v. Michigan, 111 S.Ct. 2680, 2709 (1991).
 
 
 23
 AFFIRMED.
 
 
 
 *
 Honorable Thomas M. Reavley, Senior United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3