UNITED STATES of America,
Plaintiff-Appellee,

v.

Jesus PEREZ, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Benjamin Asuncion MARQUEZ,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Solomon de la GARZA–GARZA,
Defendant-Appellant.

Nos. 81–1624 to 81–1626.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 8, 1982.

Decided Sept. 28, 1982.

As Amended Nov. 1, 1982.

Hermilio Iniguez, Phoenix, Ariz., for Perez.

Howard E. Beckler, Beckler & Stevens, Hollywood, Cal., for Marquez.

Leon Thikoll, Tucson, Ariz., for de la Garza-Garza.

Gloria G. Ybarra, Asst. U.S. Atty., Phoenix, Ariz., for U.S.A.

Before GOODWIN, NELSON and MARSHALL.*

PER CURIAM.

This is the second appeal in this case. In its prior decision, this court held that the warrantless search of a truck in which appellants smuggled heroin from Mexico was not within the exceptions to the warrant requirement for extended border searches or consent, but remanded for a finding by the district court as to whether these particular defendants had a reasonable expectation of privacy in the gas tank where the heroin was found. *United States v. Perez,* 644 F.2d 1299 (9th Cir. 1981). The issue on this appeal is whether the district court erred in finding that they had no such expectation.[1]

On October 17, 1979, Perez entered the United States at Nogales, Arizona. Perez

---

* The Honorable Consuelo B. Marshall, United States District Judge for the Central District of California, sitting by designation.

1. The result in this case is not affected by the recent Supreme Court decision in *United States v. Ross,* —— U.S. ——, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), which requires probable cause to justify the warrantless search of closed containers in an auto. The government has never claimed probable cause in the case at bar. Neither was this a search incident to arrest.

and de la Garza were suspected of smuggling drugs from Mexico, and were listed as individuals worthy of attention when crossing the border.

When Perez left the port of entry, a customs officer followed him. Perez met Marquez and de la Garza at a bar in Nogales. The next morning, Perez stayed in Nogales while Marquez and de la Garza walked into Mexico. They returned a few hours later, and met Perez at the bar. That evening, they were joined by a man named Sanchez. After they talked, Sanchez returned to Mexico. The other three stayed the night in Nogales.

The next morning, the three appellants met in a parking lot, and were joined by Sanchez in a green truck. Sanchez and Perez got into the truck together and drove away. A few minutes later, Marquez and de la Garza followed in a car.

The truck and car drove north, tailed by several customs patrol cars. They stopped at a border patrol checkpoint. Sanchez told the immigration officers that he was a Mexican citizen. He said he had just come from Mexico to pick up some farm equipment in Casa Grande, Arizona. The border patrol officer observed a Mexican registration sticker on the truck windshield. This information was radioed to the customs officers who followed. The truck and car proceeded north. In Tucson, the caravan turned west toward Casa Grande. From Tucson to Casa Grande, the vehicles were under both air and ground surveillance. During the entire 160-mile trip from Nogales to Casa Grande, surveillance was virtually unbroken.

Once in Casa Grande, the four men left the truck in a parking lot, and drove into the desert in the car that had been following the truck. The men stopped at the side of the road to eat and drink. As it got dark, the customs officers approached the four men with weapons drawn. The officers asked Sanchez if they could search the truck. He said yes. The officers returned with the men to the parking lot. The officers again asked Sanchez if they could search the truck. Sanchez said yes, and handed the keys to one of the officers.[2] A

dog trained in narcotics sniffed at the gas tank. When the officers searched the gas tank they found four pounds of heroin taped to the inside of the tank. The officers used a wire found in the car to extract the heroin.

In our prior opinion, we held that the owner/driver of the truck, Sanchez, would have had a legitimate expectation of privacy in the truck; Sanchez, however, died before trial. We remanded for the trial court to decide whether the appellants had sufficient connection with the truck to give rise to a reasonable expectation of privacy.

On remand, the district court took the testimony of Marquez and Perez. The court found that the defendants paid Sanchez $300 to transport the heroin across the border and that Perez placed the heroin in the gas tank, but concluded that the appellants had no reasonable expectation of privacy in the truck or its contents. The district court appears to have been influenced by the testimony that the truck had been hired by one Lopez, a Mexican farmer who also supplied the contraband, and that these appellants had neither owned nor driven the truck.

Perez contends that the defendants' arrangements for the use of the truck and gas tank created a reasonable expectation of privacy. He argues that his placement of the contraband in the gas tank and his riding in the truck as an escort after it crossed the border exemplify a proprietary interest in the contents of the truck as well as an interest in the truck itself, at least for the term of the hire.

Marquez and de la Garza join in Perez's arguments, and add that the trial court's emphasis on whether or not defendants had personally "hired" the truck is misplaced in light of the Supreme Court's admonition that subtle distinctions in property law do not govern Fourth Amendment analysis. *United States v. Salvucci,* 448 U.S. 83, 91, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619 (1980).

The government argues that the appellants lacked a reasonable expectation of privacy in the truck, and that they failed to

2. In the former opinion we held that this con- sent was coerced. 644 F.2d at 1303.

demonstrate the right to exclude others from the truck. While the right to exclude others has been mentioned as a factor in Fourth Amendment analysis, it is neither exclusive nor determinative standing alone. Moreover, there is every reason to infer that the appellants would have taken steps to exclude others who attempted to interfere with the contents of the gas tank or the truck. The district court made no finding on the defendants' right to exclude others. It also took insufficient notice of the fact that Marquez and de la Garza scarcely let the truck out of their sight as they followed in their car.

The cases cited by the government are not controlling. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), involved mere passengers in a car, who asserted no proprietary or possessory interest in the car or in the property seized, and who failed to assert a legitimate expectation of privacy in the areas of the car which were searched (the glove compartment and the area under the seat, areas in which passengers *qua* passengers would not normally have a legitimate expectation of privacy). A similar fact pattern existed in *United States v. Portillo,* 633 F.2d 1313 (9th Cir. 1980), *cert. denied,* 450 U.S. 1043, 101 S.Ct. 1764, 68 L.Ed.2d 241 (1981). Defendants in the case at bar, however, assert an interest both in the truck and in the seized property.

*United States v. Freie,* 545 F.2d 1217 (9th Cir. 1976), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1645, 52 L.Ed.2d 356 (1977), and *United States v. Pruitt,* 464 F.2d 494 (9th Cir. 1972), both involved caches in the out of doors, readily accessible to passersby, which inherently suggest a significantly lesser expectation of privacy than that claimed by the defendants here in a closed, and supposedly secret, compartment of a private vehicle. While *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), holds that ownership of drugs does not automatically create a protected expectation of privacy, defendants here do not rely solely on their ownership of the seized property. Moreover, "property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated." *United States*

*v. Salvucci,* 448 U.S. at 91, 100 S.Ct. at 2553. Similarly, legitimate presence at the time of the search has been held a relevant, but not controlling, factor. *Rakas v. Illinois,* 439 U.S. at 148, 99 S.Ct. at 433.

■■ This court has previously held that Sanchez had a legitimate expectation of privacy in the area searched. This is the law of this case. A person may have a legitimate expectation of privacy in a place or object he does not own. *United States v. Reyes,* 595 F.2d 275, 278 (5th Cir. 1979). The appellants have met their burden of showing that their arrangements with Sanchez and their exercise of joint control and supervision of the truck evinced a reasonable expectation of privacy which was illegally infringed by the warrantless search. The fact that Lopez, the farmer, hired Sanchez to pick up farm equipment is not inconsistent with the appellants' also hiring Sanchez to transport contraband on the same trip. The district court found that the defendants paid Sanchez $300 to be their "mule." Whatever language one chooses to characterize the relationship between the defendants and Sanchez, it is clear that a formalized arrangement had been made between them for the transportation of the contraband. The defendants subsequently kept the truck under close surveillance, one riding in it and the other two following it, in order to make sure no one interfered with the carrying out of their plan and the delivery of their property. They took reasonable precautions to maintain their privacy interest. *Cf. Rakas,* 439 U.S. at 152–53 (Powell, J., concurring), and *United States v. Medina-Verdugo,* 637 F.2d 649 (9th Cir. 1980).

In *United States v. Culbert,* 595 F.2d 481 (9th Cir. 1979), this court held that a defendant had no reasonable expectation of privacy in a rental truck when he had abandoned it and was not present when it was searched. Defendants in this case never abandoned the truck, and were present at the time of the search, which was directed against all of them.

The appellants had a legitimate expectation of privacy in the gas tank of Sanchez'

truck. This court has previously held the warrantless search of the gas tank illegal under the Fourth Amendment. *United States v. Perez*, 644 F.2d 1299 (9th Cir. 1981). The evidence should have been suppressed.

Reversed.