UNITED STATES of America,
Plaintiff-Appellee,

v.

Lawrence J. KOVAC,
Defendant-Appellant.

No. 85–3141.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1986.

Decided Aug. 7, 1986.

Jeffrey J. Kent, Thomas M. Coffin, Eugene, Or., for plaintiff-appellee.

Jay W. Frank, Moule & Frank, Eugene, Or., for defendant-appellant.

Before ALARCON, REINHARDT, and THOMPSON, Circuit Judges.

ALARCON, Circuit Judge:

Defendant/appellant Lawrence J. Kovac (hereinafter Kovac) appeals from the judgment entered following his conviction under 21 U.S.C. § 841(a)(1) for possession of cocaine with intent to distribute. Kovac contends that the trial court erred in denying his motion to suppress evidence seized from his house pursuant to a search warrant. He raises three arguments on appeal: (1) that information which furnished probable cause for issuance of the search warrant was obtained in violation of his Fourth Amendment rights, thus tainting the warrant and the evidence seized; (2) that the affidavit supporting the warrant was fatally deficient; and (3) that the search warrant was unlawfully executed.

Pursuant to his receipt of information that Kovac was selling large amounts of cocaine from his home, Special Agent Donald Sims (hereinafter Sims) of the Federal Drug Enforcement Agency (DEA) conducted a surveillance of Kovac's residence for over two weeks. In order to obtain information to support the issuance of a search warrant for the residence, Sims and Officer James Miller (hereinafter Miller) of the Salem Police Department (SPD) stopped Catherine Jo Robins (hereinafter Robins), Kovac's sister-in-law and then a probationary employee of the SPD, as she was driving away from Kovac's residence. The officers did not search Robins' car; instead, they questioned her regarding whether she had observed narcotics trafficking at Kovac's residence. After initially denying that she had observed any criminal activity, Robins admitted that she had seen a plastic bag containing over an ounce of marijuana at the residence that day.

State Police Officer Erik Vognild (hereinafter Vognild) relied on Robins' statement in his affidavit in support of the application for a search warrant for Kovac's residence. The warrant was issued by an Oregon state judge. Kovac's house was searched. The search disclosed, *inter alia*, 1.6 pounds of

cocaine and 1.3 pounds of marijuana. We discuss the facts pertinent to each of Kovac's contentions under separate headings.

## I. The Stop of Robins' Car

Kovac first contends that the stop of Robins' car violated his Fourth Amendment rights, and consequently, the search warrant and the evidence seized were tainted. The trial court found that Kovac lacked a legitimate expectation of privacy in Robins' car and, therefore, could not complain of the stop and its consequences. Where the facts are not in dispute, we review the issue of "standing" *de novo*. *United States v. Kuespert*, 773 F.2d 1066, 1067 (9th Cir.1985).

██ In order to contest the legality of a search or seizure, the defendant must establish that he or she had a "legitimate expectation of privacy" in the place searched or in the property seized. *Rakas v. Illinois*, 439 U.S. 128, 143–44, 99 S.Ct. 421, 430–31, 58 L.Ed.2d 387 (1978). The defendant must have exhibited an actual, subjective expectation of privacy and, more importantly, the expectation must be one that society is prepared to accept as reasonable and therefore, legitimate. *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *United States v. Pollock*, 726 F.2d 1456, 1465 (9th Cir. 1984). The defendant has the burden of establishing that, under the totality of the circumstances, the search or seizure violated his legitimate expectation of privacy in a particular place. *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980).

██ Kovac asserts that he had a legitimate expectation of privacy in Robins' car because: (1) the car was parked in front of his house on three occasions during Sims' surveillance; (2) Kovac had driven the car once during that period; (3) Kovac's wife had a key to the car; and (4) Kovac and his wife had permission to use the car.

Kovac did not own the car and thus did not have an inherent right to control the car. *See Rakas*, 439 U.S. at 144 n. 12, 99 S.Ct. at 431 n. 12 (although "arcane" con-

cepts of property law do not control, the owner of property will in all likelihood have a legitimate expectation of privacy in property by virtue of his inherent right to control it). Nor was Kovac present at the stop so as to be exercising actual control over the vehicle. *Cf. United States v. Perez*, 689 F.2d 1336, 1338 (9th Cir.1982) (defendants had a legitimate expectation of privacy in a truck they did not own because they were closely following and supervising the truck as it made its journey); *United States v. Portillo*, 633 F.2d 1313, 1317 (9th Cir.1980) (defendant had a legitimate expectation of privacy in a car he did not own because he was in possession of the car with the permission of the owner and had a key to it, thus having the requisite level of control over the car), *cert. denied*, 450 U.S. 1043, 101 S.Ct. 1764, 68 L.Ed.2d 241 (1981).

The sporadic and limited availability of Robins' car to Kovac does not comport with the formal "joint control" arrangements which we have recognized as conferring a legitimate expectation of privacy on a defendant in a place he does not own. *Cf. Pollock*, 726 F.2d at 1465 (defendant was co-operator of a drug laboratory in his friend's house; he was exercising "joint control" over the property, and thus had a legitimate expectation of privacy in the house); *United States v. Johns*, 707 F.2d 1093, 1100 (9th Cir.1983) (because they had a formal arrangement over the vehicle for transportation of contraband, defendants had a legitimate expectation of privacy in marijuana bales seized from a vehicle they did not own), *rev'd on other grounds*, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985); *Perez*, 689 F.2d at 1338 (defendants had a formal arrangement with a driver for transporting contraband in truck which they did not own). In *Pollock, Johns,* and *Perez*, the defendants were actively involved in joint control, with the owner, of a place or vehicle which they did not own. By contrast, Kovac's authority to use the car was limited by the availability of the car for his use—the car was at his house only three times in over two weeks—and, in fact, he actually used the car only once during that time. Moreover, the defend-

ants in *Pollock, Johns,* and *Perez* were asserting a proprietary interest in goods seized from a place or vehicle which they did not own, while Kovac asserts an interest in a person who happened to occupy a vehicle which he did not own. "Unlike a house, a truck, or a package, one cannot acquire a right to exclude others from access to a third person." *United States v. Kuespert*, 773 F.2d at 1068; *accord, United States v. Brown*, 743 F.2d 1505, 1507–08 (11th Cir.), *reh'g denied*, 749 F.2d 733 (1984) (en banc).

Finally, Kovac cannot assert a legitimate expectation of privacy in the car based on Robins' familial relationship to his wife; the fact that Kovac's *wife* had a key to the car does not confer a legitimate expectation of privacy on Kovac. *See United States v. Hodges*, 606 F.2d 520, 523 (9th Cir.1979) (defendant could not have a legitimate expectation of privacy in the searched premises based on his relationship with a co-conspirator whose father owned the premises), *cert. denied*, 444 U.S. 1035, 100 S.Ct. 708, 62 L.Ed.2d 671 (1980).

Because Kovac did not have a significant connection with Robins' car by which he had either an inherent or actual right to control its use and exclude others, he did not have a legitimate expectation of privacy in the car. Therefore, the trial court correctly held that Kovac's Fourth Amendment rights were not implicated by the stop of Robins' car.

## II. Validity of Search Warrant For Kovac's Residence

Kovac next contends that the affidavit filed in support of the search warrant was invalid.

### A. *Applicable Law*

■ Kovac's argument that state law should apply to determine the validity of the warrant and the search is meritless. In *United States v. Henderson*, 721 F.2d 662, 664 (9th Cir.1983), *cert. denied*, 467 U.S. 1218, 104 S.Ct. 2665, 81 L.Ed.2d 370 (1984), we commented that "[i]t is clear from our precedents that evidence obtained by feder-

al officials, or by federal officials *acting in concert with state officers*, in violation of state law but in compliance with federal law is admissible." (emphasis added). *See United States v. Adams*, 694 F.2d 200, 201–02 (9th Cir.1982) (evidence obtained by federal and state officials in conformance with federal wiretapping statute is admissible in federal prosecution without regard to state law), *cert. denied*, 462 U.S. 1118, 103 S.Ct. 3085, 77 L.Ed.2d 1347 (1983); *United States v. Daniel*, 667 F.2d 783, 785 (9th Cir.1982) (per curiam) (where federal agent was involved in state investigation and decision had been made prior to wiretap to present case to federal court rather than to state court for prosecution, evidence secured by wiretap in conformity with federal constitution and federal law, but in violation of state law, was admissible).

In the instant case, the federal officials were clearly acting in concert with state officers in obtaining the information from Robins and in executing the search warrant. Thus, whether the officials complied with state law is not relevant; the only question is whether the officials acted in compliance with federal law.

### B. *Sufficiency of the Affidavit*

■ After Sims and Miller stopped Robins on the open road, Robins agreed to accompany them to the Eugene DEA office, where she was questioned for approximately two hours before she admitted that she had seen narcotics at Kovac's residence. The affidavit for the search warrant was based upon information provided by Robins. It stated, in pertinent part:

That I [Officer Vognild] had a conversation today with Donald Sims.... That he told me that he had a *conversation* today with Catherine Jo Robins.... Sims further told me that Robins told him that she saw more than one ounce of marijuana today at the home of her brother-in-law, Lawrence J. Kovac....

(emphasis added).

Kovac argues that the affiant Vognild's characterization of Robins' questioning as a "conversation," rather than as an "inter-

rogation," was an intentional and material falsity which rendered the affidavit fatally deficient and the warrant invalid. The trial court found that Kovac did not make a sufficient showing that the statement was intentionally false and, even if inaccurate, the statement was not necessary to a finding of probable cause. The court denied Kovac an evidentiary hearing on the issue. We review the denial of the required evidentiary hearing *de novo*. *United States v. Dicesare*, 765 F.2d 890, 895, *amended*, 777 F.2d 543 (9th Cir.1985).

In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court held that in cases involving evidence seized pursuant to a search warrant, the exclusionary rule continues to apply where the "magistrate or judge in issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth." *Leon*, 468 U.S. 897, —, 104 S.Ct. at 3421 [bound volume of official reporter not yet available] (citing *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). Under *Franks*, an affidavit supporting a search warrant will not be questioned unless the defendant can make a substantial preliminary showing that a knowing and intentionally false statement was included in the affidavit and that the statement was necessary to the finding of probable cause. *Franks*, 438 U.S. at 155–56, 171–72, 98 S.Ct. at 2676–77, 2684–85. If a defendant makes such a showing, he is entitled to an evidentiary hearing on the warrant's validity. *Id.*

Kovac made no showing that Vognild intentionally used the word "conversation" so as to deceive the judge, and in the context used, the word would not support such a finding. *See Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (affidavits must be viewed in practical, common sense manner). More importantly, the characterization of the interview had no bearing on finding probable cause. The affidavit sufficiently established who Robins was, her "basis of

knowledge" for the given information, her interest in giving true information, and the information itself which clearly supported finding probable cause. *See id.* ("task of magistrate is to consider all information, "including 'veracity' and 'basis of knowledge' of persons supplying hearsay information."). Thus, the issuing judge was presented with sufficient information to make a finding that, under the totality of the circumstances, probable cause existed that narcotics would be found in Kovac's residence. *Id.* (magistrate must determine if there is a "fair probability that contraband" will be found in a particular place).

Therefore, the affidavit was sufficient to support issuance of a search warrant under federal law.

### III. Execution Of The Search Warrant

■ Finally, Kovac contends that the search warrant was unlawfully executed because the police failed to comply with the requirement of 18 U.S.C. § 3109 that they be refused admittance by the occupant of the house before entering. The trial court made the following findings of fact regarding the execution of the warrant: (1) Vognild had knocked and announced that they were police officers with a search warrant; (2) Sims saw Kovac, dressed only in his underwear, observing them through the front window; (3) Sims saw Kovac move away from the door after they had knocked; and (4) the police then entered through the unlocked front door. The trial court concluded that exigent circumstances existed which justified the entry.

We review the district court's determinations of historical facts under the clearly erroneous standard. *United States v. McConney,* 728 F.2d 1195, 1200 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). The district court's selection of the relevant legal principles is reviewed *de novo. Id.* at 1200–01.

In *United States v. Whitney,* 633 F.2d 902, 909 (9th Cir.1980), *cert. denied,* 450 U.S. 1004, 101 S.Ct. 1717, 68 L.Ed.2d 208 (1981) (en banc), we recognized an exigent circumstances exception to the section 3901

"knock-notice" requirement. In *McConney,* we held that when the police have properly knocked and announced themselves, "mild exigency is sufficient to justify simultaneous entry when entry can be accomplished without physical destruction of property." 728 F.2d at 1206. "Mild exigency may exist where there is a likelihood that the occupants will try to escape, resist, or destroy evidence." *Id.*

In the instant case, the "mild exigency" test of *McConney* is clearly met. The fact that the officers observed Kovac moving away from the door after they knocked and gave notice of their identity supports a finding that a mild exigency existed. *See United States v. Moreno,* 701 F.2d 815, 818 (9th Cir.1983) (possibility of destruction of evidence exists in every narcotics investigation; there must be specific evidence to support the suspicion that the contraband will be destroyed), *vacated on other grounds,* —— U.S. ——, 105 S.Ct. 286, 83 L.Ed.2d 223 (1984); *see also United States v. Fluker,* 543 F.2d 709, 717 (9th Cir.1976) (officers must have observed suspicious activity from within premises, e.g., sound of running feet, for there to be exigent circumstances). Thus, the execution of the search warrant was lawful under federal law.

The judgment is AFFIRMED.

REINHARDT, Circuit Judge, concurring:

I concur in the result reached by the majority. However, I must register my strong disagreement with its decision first to reach out for and then to resolve in a most perfunctory manner an important issue of first impression with significant constitutional implications and equally significant implications regarding the proper balance to be struck between state and federal law. The majority concludes that where a joint investigation occurs federal law governs the validity of a state search warrant issued to a state law enforcement officer by a state court. It does so by adopting without analysis or discussion a rule previously applied only in an entirely different factual and legal context. There is no rea-

son whatsoever for us to decide the question the majority resolves. There are at least two other ways to uphold the validity of the warrant at issue here. Both allow us to avoid resolving the sensitive issue of whether state or federal law is applicable.

Whether state or federal law should be used to test the validity of a state warrant obtained by a state officer involved in a joint investigation with federal officers has not previously been decided by this court. The issue is a difficult one involving important interests both from the state and federal standpoint. It should be resolved only after careful inquiry, an inquiry the majority fails entirely to undertake. Moreover, as I have already stated, there is absolutely no reason to decide the question here— first, because the warrant clearly is valid under *both* federal and Oregon state law and, second, because the officers relied on the warrant in good faith. The majority offers no excuse for its disregard of the principle that "constitutional issues should be addressed only when *strictly* necessary." *Hospital & Service Employees Union v. N.L.R.B.,* 743 F.2d 1417, 1427 (9th Cir.1984) (emphasis added); *see also, e.g., Minnick v. California Department of Corrections,* 452 U.S. 105, 122–23, 101 S.Ct. 2211, 2220–21, 68 L.Ed.2d 706 (1981); *Rescue Army v. Municipal Court,* 331 U.S. 549, 568, 67 S.Ct. 1409, 1419, 91 L.Ed. 1666 (1947) ("policy of strict necessity in disposing of constitutional issues"). Even if the issue in the case before us does not fall directly within that rule, the principle is equally applicable in view of both the constitutional implications and the sensitivity of the issue.

The majority quotes *United States v. Henderson,* 721 F.2d 662 (9th Cir.1983), to support its pronouncement that the suggestion that state law might apply in the present case is "meritless." In *Henderson* the search warrant was obtained by an FBI agent, relying in part on information from a county sheriff, and was presumably a *federal* warrant. It is correct that in dictum we said that evidence obtained by federal officials in violation of state law is not inadmissible even where the federal officials are acting in concert with state officers. however, nothing in that dictum or elsewhere in *Henderson* provides any support for a holding that federal law applies when determining the validity of a state search warrant obtained from a state court by a state officer. Moreover, we held the search warrant valid in *Henderson* not because federal law applied, but because the affidavit supporting the warrant established probable cause even without the disputed material. The other two cases cited by the majority, *United States v. Adams,* 694 F.2d 200 (9th Cir.1982), *cert. denied,* 462 U.S. 1118, 103 S.Ct. 3085, 77 L.Ed.2d 1347 (1983), and *United States v. Daniel,* 667 F.2d 783 (9th Cir.1982) (per curiam), are no more supportive of the majority's conclusion. Both involved wiretaps conducted jointly by federal and state officers in conformity with federal wiretap law; neither involved a state search warrant issued by a state court.

In short, none of the cases relied upon by the majority deals remotely with the issue presented by the instant case—the validity of a *state* warrant procured by a *state* officer from a *state* court. Both the state and the federal interests are substantially different in a case where a search is conducted pursuant to a warrant issued under state law than in a case where a search is conducted under federal law and there is no involvement of a state court at all. The state has a strong interest in preserving the integrity of its own judicial process, an interest that we should at least consider before we decide that the state's law is irrelevant.

It may be that federal law should apply in the present case. However, this important issue should be resolved only after a proper analysis, including an express weighing of the state's interest in the integrity of its warrants. We should not so cavalierly adopt, without discussion, a rule developed in cases not involving state warrants—and certainly, if we do so, we should not dismiss a party's objections as "meritless" while erroneously claiming that we are merely applying existing law.

As I stated earlier, the warrant may be held valid on either of two alternative grounds, neither of which depends upon our answering the question whether federal or state law applies. First, the challenged affidavit is sufficient to support a finding of probable cause under *both* Oregon and federal law. Oregon requires that an affidavit supporting a search warrant satisfy the "two-prong" test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), that formerly was employed in federal courts. *See* Or.Rev.Stat. 133.545; *State v. Horwedel*, 66 Or.App. 400, 674 P.2d 623, 624–25 (1984). Under this test, an affidavit containing hearsay information must set forth both the informant's "basis of knowledge" and facts showing the informant's "veracity" by indicating either that the informant is credible or that his information is reliable. *See, e.g., State v. Carlile*, 290 Or. 161, 619 P.2d 1280, 1281 (1980). Under current federal law, on the other hand, an affidavit supporting a search warrant is to be tested under the more relaxed "totality of the circumstances" test. *See Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Consequently, an affidavit that is sufficient under the more restrictive Oregon standard also satisfies the federal standard. *Horwedel*, 674 P.2d at 625.

As the majority points out, Kovac has made no showing that the word "conversation" was inaccurate. *See, e.g., Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (affidavits must be read in common sense manner); *State v. Villagran*, 294 Or. 404, 657 P.2d 1223, 1226 (1983) (in banc) (same). In addition, inaccuracies in an affidavit do not invalidate a warrant if the rest of the affidavit supports a finding of probable cause. *E.g., State v. Freehely*, 27 Or.App. 343, 556 P.2d 142, 145 (1976). As the majority indicates, the unchallenged information in the affidavit was sufficient to establish the basis of knowledge of the witness on whose statement the state officer relied and the witness's interest in providing accurate information,

and to support a finding that probable cause existed that contraband would be found at Kovac's house. *See State v. Anspach*, 298 Or. 375, 692 P.2d 602, 605 (1984) (in banc) (probable cause standard met if facts would "lead a reasonable person to believe that seizable things will probably be found in the location to be searched"). If the majority believes the affidavit is defective under Oregon law, it should explain why it reaches that conclusion. If it does not, there is clearly no reason for us to address the issue of whether to apply federal or state law.

The second alternative ground that would avoid the necessity of deciding the unresolved choice of law issue is that, even if the warrant is invalid under the applicable law, evidence obtained pursuant to it may nevertheless be admitted because the officers acted in good faith reliance on the warrant. *See United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Although the district court did not address the issue whether the officers acted in good faith, "if the record is adequate we can reach that question for the first time on appeal since the district court's determination of good faith would be subject to *de novo* review." *United States v. Hendricks*, 743 F.2d 653, 656 (9th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985). Here, the record is adequate. Reliance on a warrant normally establishes the officer's good faith, *Leon*, 468 U.S. at 922, 104 S.Ct. at 3421; Kovac has made no showing that would suggest a contrary conclusion in the present case.

The majority's failure to analyze the important question it resolves is unfortunate; the state's legitimate and significant interest in the integrity of its judicial process should not be so lightly subordinated. The majority's decision to resolve the previously unanswered question is in any event unjustified; there are two independent grounds upon which our decision could be based, neither of which requires the making of new law. Accordingly, I do not join in that portion of the court's opinion that unnecessarily (and possibly incorrectly)

holds that federal law applies in determining the validity of the state search warrant.