26 F.3d 135
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dionisio VASQUEZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Nicolas SALTARIS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose GONZALEZ-PEREZ, Defendant-Appellant.
 Nos. 92-50643, 92-50647 and 92-50661.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 7, 1993.
Decided May 19, 1994.
 
 Before: TANG, D.W. NELSON, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Three of six defendants convicted of participating in a cocaine distribution conspiracy appeal their convictions. Dionisio Vasquez ("Vasquez"), Nicholas Saltaris ("Saltaris"), and Jose Gonzalez-Perez ("Gonzalez-Perez") were convicted of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. Sec. 846. In addition, Saltaris and Gonzalez-Perez were each convicted of possession with intent to distribute cocaine in violation of 18 U.S.C. Sec. 841(a)(1), and Saltaris was found guilty of use of a firearm during commission of a drug trafficking offense in violation of 18 U.S.C. Sec. 924(d). We affirm the convictions.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 3
 On January 22, 1992, Nicko Carcich, an officer with the Ontario (California) Police Department on assignment with the DEA, learned that two male guests had arrived at the Holiday Inn in Ontario in a tractor-trailer on January 18, 1992, and, for four days, had not moved the truck from the hotel parking lot. Concluding that the four-day layover was inconsistent with the practice of most truck drivers, and that the men "might be involved in ... narcotics trafficking," Carcich and other officers began surveillance of the truck and the two men at noon on January 22. The men were later identified as Vasquez and Saltaris. Saltaris had checked in to the hotel under an assumed name, but the police were able to identify him because he had given the hotel his proper driver's license number. Records showed that Saltaris previously had served as a DEA informant.
 
 
 4
 After two days of surveillance in which the men were observed leaving the Holiday Inn and checking-in at a nearby Motel 6, visiting a truck stop, making numerous telephone calls from pay phones, and repeatedly visually scanning the activities in and around the parking lot of the motel, the officers observed what they described as a "car switch." The officers first observed a taxi cab enter the Motel 6 parking lot. The taxi honked, Vasquez came out of his room and got in the taxi, and the taxi drove away. Mr. Saltaris remained in his room but periodically opened the door or looked out the window. Roughly half an hour later, a Nissan Sentra driven by Mr. Vasquez arrived at the motel and parked next to the truck. Vasquez went to Saltaris' room and both returned to the Sentra where they proceeded to remove four cardboard boxes from the trunk of the Sentra, and a fifth box from the rear seat. The two men loaded these boxes, each roughly 18 inches square, into the cab of the tractor-trailer. They briefly returned to their rooms, each retrieving their belongings, then climbed into the truck and drove off. When the men arrived at the truck stop they had visited earlier in the day, officers arrested them and searched the cab of the truck. The officers immediately opened the five cardboard boxes, which were lying loose in the sleeper portion of the cab, and discovered 260 packages of cocaine with a total weight of roughly 130 kilograms. The officers also found a handgun in Saltaris' sports bag, and a log book indicating that Vasquez and Saltaris had driven the truck together from the east coast.
 
 
 5
 Later that evening, Leon Valencia (not a party to this appeal) and Gonzalez-Perez were seen approaching the Nissan Sentra in the Motel 6 parking lot. The two men walked around the car, looking around as they did so. Valencia got in the car and began to drive away. Gonzalez-Perez walked to the street, and, looking in the direction of the Sentra, which was then being followed by a marked patrol car, hurried his pace to a near run as he crossed the street. A second marked police car intercepted Gonzalez-Perez. Police claim that Gonzalez-Perez was so distracted that he nearly ran into another marked police car as he crossed the street. He was arrested and evidence was seized linking him to the conspiracy.
 
 
 6
 Shortly after the start of the trial, having lost his motion to suppress the evidence obtained as a result of the search of the truck, Vasquez chose to plead guilty to the charges against him, reserving his right to appeal the legality of the arrest and search. Saltaris and Gonzalez-Perez each were convicted after a jury trial.
 
 ANALYSIS
 I. PROBABLE CAUSE
 
 7
 All of the appellants claim that the officers lacked probable cause to make the arrests and conduct the searches. The appellants' claims raise four distinct issues: A) Does Saltaris have standing to challenge the search of the truck? B) Should the district court have held an evidentiary hearing prior to denying Vasquez's motion to suppress? C) Did the district court err in determining that there was probable cause for the arrest of Vasquez and Saltaris and the search of the truck? D) Did the district court err in determining that there was probable cause for the arrest of Gonzalez-Perez in the vicinity of the load car? We discuss each of these issues in separate sections below.
 
 
 8
 A. Saltaris's Standing to Challenge the Search of the Truck
 
 
 9
 Standing is a question of law reviewed de novo. Ellis v. City of LaMesa, 990 F.2d 1518, 1529 (9th Cir.1993); United States v. Kovac, 795 F.2d 1509, 1510 (9th Cir.1986). To establish standing to challenge the legality of a search or seizure, the defendant bears the burden of proving that he had a "legitimate expectation of privacy" in the items seized or the area searched. United States v. Padilla, 113 S.Ct. 1936, 1939 (1993); Rakas v. Illinois, 439 U.S. 128, 143-44 (1978).
 
 
 10
 Saltaris claims that he had a legitimate expectation of privacy in the cab of the truck. He points to the fact that although he was not the owner of the truck and was observed merely riding as a passenger, the record shows that the truck was his only mode of transportation for the period of the surveillance, that he had put his personal belongings in the truck, and that officers found a log book in the cab showing that he had driven from the east coast with Vasquez.
 
 
 11
 Saltaris, however, produced no evidence that he had joint control of the vehicle, and disclaimed any interest in the seized boxes. Accordingly, we conclude that Saltaris did not have standing to challenge the search and seizure of the boxes from the cab of the truck. See Rakas, 439 U.S. at 148-49 (holding that a "passenger qua passenger" does not have a legitimate expectation of privacy sufficient to confer standing to assert a Fourth Amendment challenge); United States v. Jefferson, 925 F.2d 1242, 1248-51 (10th Cir.) cert. denied, 112 S.Ct. 238 (1991) (holding that non-owner passenger who assisted in driving the car cross-country, at times even sleeping in the car, but who did not assert an interest in the items containing the contraband seized by police, lacked standing to challenge the search).
 
 
 12
 B. The District Court's Failure to Hold an Evidentiary Hearing
 
 
 13
 Vasquez claims that the district court abused its discretion when it denied him an evidentiary hearing on his motion to suppress.[1] Vasquez contends that a hearing was essential to evaluate the conclusions drawn by the surveilling officers in their declarations in support of probable cause.
 
 
 14
 A trial court's decision whether to hold an evidentiary hearing on a motion to suppress is reviewed for abuse of discretion. United States v. Mejia, 953 F.2d 461, 465 (9th Cir.1991), cert. denied, 112 S.Ct. 1983 (1992). "An evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of [material] fact ... are in issue." United States v. Walczak, 783 F.2d 852, 857 (9th Cir.1986).
 
 
 15
 Although Walczak requires the district court to hold evidentiary hearings in cases involving warrantless arrests or searches whenever there is any material factual dispute, Vasquez did not challenge the underlying facts. Instead, Vasquez argued that he should have had the opportunity to challenge the conclusions that the officers drew in their declarations. Two of the declarations merely recite what the officers observed. The third declaration, however, that of Special Agent Moore, makes a number of assertions that are not based on his surveillance of the defendants, but on his claimed expertise in narcotics trafficking.
 
 
 16
 After stating his credentials (Moore reported having participated in some 200 cases involving surveillance of individuals suspected of transporting narcotics and having attended three training seminars on the use of commercial vehicles in the transport of narcotics), Moore asserted, for example, that "Commercial truck drivers do not stay in motels with their trucks parked idle for several days" and that "Commercial truck drivers do not register in motels under assumed names." Phrased as absolutes, Moore's assertions appear overly broad. If the assertions had been a necessary predicate for the district court's finding of probable cause, we agree that Vasquez's claim would merit careful scrutiny. Compare United States v. Ayers, 924 F.2d 1468, 1479 (9th Cir.1991) (in evaluating affidavit supporting probable cause for search, court may rely on conclusions of experienced officers regarding where evidence of a drug crime is likely to be found) with Nicacio v. I.N.S., 768 F.2d 1133, 1138-39 (9th Cir.1985) (noting that, even in the reasonable suspicion context, an officer's inferences must "flow from objective facts and be capable of rational explanation," and that "[w]hile an officer may evaluate the facts supporting reasonable suspicion in light of his experience, experience may not be used to give the officers unbridled discretion ..."). However, because the district court expressly ruled that there was probable cause regardless of the merits of Moore's assertions, a conclusion with which we agree, we hold that the district court did not abuse its discretion in failing to hold an evidentiary hearing.
 
 
 17
 C. The Arrest of Vasquez and Saltaris and the Search of the Truck
 
 
 18
 We review de novo the district court's denial of a motion to suppress. United States v. Khan, 993 F.2d 1368, 1375 (9th Cir.1993). "Probable cause exists when, at the time of arrest, the agents know reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense." United States v. Delgadillo-Velasquez, 856 F.2d 1292, 1296 (9th Cir.1988). Probable cause is to be determined by looking at the totality of the circumstances, United States v. Cortez, 449 U.S. 411, 417 (1981), and at the collective knowledge of the officers involved, United States v. Bertrand, 926 F.2d 838, 844 (9th Cir.1991).
 
 
 19
 The government presented declarations from three surveilling officers in opposition to Vasquez's and Saltaris' motion to suppress. The government claims that the facts set forth in the declarations, even without the disputed conclusions of Special Agent Moore, were sufficient to establish probable cause. We agree.
 
 
 20
 A number of the factors relied on by the district court have been deemed relevant to determinations of probable cause in previous cases. Thus, this court has deemed relevant the fact that tractor-trailers sat empty in a parking lot, see United States v. Mejia, 953 F.2d 461, 464 (9th Cir.1991); that suspects used pay-phones, see United States v. Del Vizo, 918 F.2d 821, 826 (9th Cir.1990); that suspects appeared to be visually scanning their surroundings, see United States v. Bernard, 623 F.2d 551, 559-60 (9th Cir.1979); and that boxes were loaded into a commercial vehicle in a motel parking lot, see Mejia, 953 F.2d at 464, United States v. Ocampo, 937 F.2d 485, 490 (9th Cir.1991). The officers here, moreover, knew from the beginning of their surveillance that Saltaris was a former DEA informant who had registered at the lodgings under a false name.[2] After two days of continuous surveillance in which officers observed the men engaging in a number of activities consistent with narcotics trafficking, they then observed the "car switch": the departure and quick return of Vasquez in the Sentra, the unloading of the boxes from the Sentra into the truck, and the immediate departure of the men in the truck with their luggage, leaving the Sentra behind. We conclude that, when viewed as a totality, this evidence is sufficient to sustain a finding of probable cause.
 
 D. The Arrest and Search of Gonzalez-Perez
 
 21
 Gonzalez-Perez was stopped while hurrying across the street, shortly after he had been observed on foot approaching and circling the load car in the motel parking lot with another man. A number of the items seized from him at the time of his arrest subsequently were used against him at trial. Gonzalez-Perez claims that the arrest and search were made without probable cause.[3]
 
 
 22
 Gonzalez-Perez contends that his only connection with the crime, that he was seen approaching and circling the load car with Valencia, the man who eventually got in the car and drove it away, did not give the police cause to arrest him. See Ybarra v. Illinois, 444 U.S. 85, 93 (1979) (noting that probable cause must be particularized with respect to the person seized); United States v. Robertson, 833 F.2d 777, 783 (9th Cir.1987) ("It is insufficient to point to the defendant's mere proximity to others independently suspected of criminal activity."). Although we might agree if the facts implicating Gonzalez-Perez were limited to his proximity to Valencia, the record establishes that the government had significant additional reasons for making the arrest.
 
 
 23
 Prior to the arrest of Gonzalez-Perez, the surveilling officers knew that "someone" involved in the conspiracy would be coming to pick up the load car. Contrary to Gonzalez-Perez's contention, we believe that this information gave the officers reason to be highly suspicious of anyone who directly approached the load car, whether he arrived alone or accompanied by another person. Agent Moore saw Gonzalez-Perez circling and looking around carefully in the vicinity of the load car together with Valencia, and then saw him break into a near run when a police car began to tail Valencia. We conclude that the totality of the evidence is sufficient to sustain a finding of probable cause. Accordingly, we hold that the district court did not err in denying Gonzalez-Perez's motion to suppress.[4]
 
 
 24
 II. SALTARIS' CHALLENGES TO THE TRIAL COURT'S RULINGS
 
 
 25
 Saltaris claims that a number of errors were made during his trial, each sufficient to warrant reversal. Saltaris asserts the following claims: A) the trial court erred when it allowed the jury to hear that Saltaris previously had been a DEA informant; B) the prosecution engaged in misconduct when it elicited testimony from a witness indicating that Saltaris had engaged in plea bargain negotiations; C) Saltaris received ineffective assistance of counsel when his counsel failed to move for a mistrial upon hearing the reference to the plea negotiations and when counsel failed to call certain witnesses; and D) the jury's verdicts were not supported by the evidence. These claims are addressed in separate sections below.
 
 A. Admission of the Prior Acts Evidence
 
 26
 At trial, the court allowed the government to introduce evidence that Saltaris had served as an informant for the DEA for two months in 1989. The government sought to introduce the evidence in order to undermine Saltaris' contention that he did not know what was in the boxes that he had helped Vasquez load into the truck. As an informant in 1989, Saltaris had introduced a DEA agent to a prospective purchaser of cocaine, and had provided information relating to the interstate transportation of cocaine by tractor-trailer. In particular, Saltaris had provided information relating to the secret storage of cocaine in trucks transporting vegetables. Over Saltaris' objection, the court ruled that the evidence was proper because it would tend to show that Saltaris was knowledgeable about cocaine trafficking by truck, and because its probative value outweighed its prejudicial effect.
 
 
 27
 The admission at trial of prior acts under Rule 404(b) is reviewed for abuse of discretion. United States v. Mundi, 892 F.2d 817, 820 (9th Cir.1989), cert. denied, 498 U.S. 1119 (1991). This court applies a four-part test to determine whether evidence was properly admitted under Rule 404(b): 1) sufficient evidence must exist for the jury to find that the defendant committed the other acts; 2) the other acts must be introduced to prove a material issue in the case; 3) the other acts must not be too remote in time; and 4) if admitted to prove intent, the other acts must be similar to the offense charged. See United States v. Ayers, 924 F.2d 1468, 1472-73 (9th Cir.1991) (citations omitted). To prove the requisite logical connection, the government " 'must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence.' " United States v. Mayans, No. 92-50530, slip op. 1603, 1616 (9th Cir. Feb. 9, 1994) (quoting United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir.1982)).
 
 
 28
 Saltaris contends that the fact that he had been an informant was not a "bad act" and so was not within the contemplation of Rule 404(b) and that, even if the Rule allows for admission of evidence of benign acts, Saltaris' acts as a DEA informant were not at all similar to the acts he was charged with in this case. Saltaris also contends that the prejudicial effect of admitting the evidence far outweighed its probative value.
 
 
 29
 Saltaris' first contention is without merit. Because Rule 404(b) is phrased in the disjunctive--it allows for introduction of evidence of "crimes, wrongs, or acts"--evidence of innocent conduct, as long as it is probative, is admissible under the Rule. See, e.g., United States v. Devin, 918 F.2d 280, 286 (1st Cir.1990) (stating that disjunctive terminology "shows unmistakably that Rule 404(b) reaches conduct which is neither criminal nor unlawful so long as the conduct is probative of, and revelatory as to, a permitted purpose"); United States v. Harrell, 737 F.2d 971, 978 (11th Cir.1984), cert. denied, 470 U.S. 1027 (1985) (lifestyle and non-criminal practices of motorcycle club members admissible as relevant to motive and means of conspiracy); see also 2 Weinstein's Evidence, p 404 at 404.57 (1990) ("conduct that is neither criminal nor unlawful is included if it sheds light on the defendant's character and is relevant to something other than propensity").
 
 
 30
 We also agree that the evidence satisfied the four-part test for admissibility. It is uncontested that Saltaris did the act (that he served as a DEA informant), that the act was not too remote in time, and that it was introduced to prove a material issue in dispute (whether Saltaris knew the boxes contained cocaine). Saltaris claims, however, that his acts as a DEA informant were not sufficiently similar to those for which he was charged to warrant admission of the evidence. Although providing information to a government official in order to assist in enforcement of the law is different from being involved in a conspiracy to distribute cocaine, the knowledge underlying the prior act--that commercial trucks were being used to ship cocaine clandestinely--is similar. Cf. United States v. Ramirez-Jiminez, 967 F.2d 1321, 1326 (9th Cir.1992) ("When offered to prove knowledge ... the prior act need not be similar to the charged act as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence.").
 
 
 31
 Finally, although introduction of the evidence undoubtedly was prejudicial to Saltaris to some extent, we cannot say that the district court abused its discretion in finding that the probative value of the evidence outweighed the prejudicial effect.[5]
 
 B. Prosecutorial Misconduct
 
 32
 One of the government witnesses, Agent Bernhard, had been present during a charge negotiation session with Saltaris on January 30, 1992, one week after the arrest. Although the government put Bernhard on the stand, it was defense counsel who, on recross, first queried the witness about the purposes of the January 30 discussions. Over government objection, defense counsel asked whether "one of the purposes of the meeting [was] to give Mr. Saltaris an opportunity to explain ... that he had nothing to do with the cocaine." The apparent intent of Saltaris' counsel was to elicit testimony from Bernhard to the effect that, during the January 30 discussion, Saltaris had denied having any knowledge as to what was in the boxes, thereby casting doubt on the credibility of the officers who claimed that Saltaris admitted to knowing that there was cocaine in the boxes on the night of his arrest. In his testimony, however, Bernhard rebuffed defense counsel's questions, and suggested that Saltaris' guilt or innocence was not even a topic of discussion. On redirect, the prosecutor asked for clarification of the purpose of the January 30 meeting. Bernhard responded: "I believe Saltaris was attempting to cooperate for a lesser sentence." Saltaris' counsel did not object to this statement.
 
 
 33
 Saltaris claims that, by eliciting the testimony regarding the purpose of the January 30 meeting, the prosecutor violated Fed.R.Crim.P. 11(e)(6), which provides in relevant part that evidence of "any statement made in the course of plea discussions with an attorney for the government that does not result in a plea of guilty" is not admissible. Although Rule 11(e)(6) provides that evidence of plea negotiations and statements made in such negotiations should not come before a jury, an exception is recognized where the defense already has referred to a statement made during plea negotiations. See, e.g., United States v. Mezzanatto, 998 F.2d 1452, 1454 (9th Cir.1993) ("If a defendant introduces a statement made during plea negotiations, the prosecution may introduce other relevant plea negotiation statements so that the jury receives a full account of the issue presented."), cert. granted, 62 U.S.L.W. 3690 (Apr. 16, 1994). By attempting to elicit testimony from Bernhard about one of the purposes of the January 30 meeting, counsel for Saltaris invited the government to pursue the matter. See United States v. Reyes-Alvarado, 963 F.2d 1184, 1187 (9th Cir.), cert. denied, 113 S.Ct. 258 (1992).
 
 
 34
 Accordingly, we reject Saltaris' claim that the prosecution engaged in reversible misconduct.
 
 C. Ineffective Assistance of Counsel
 
 35
 Saltaris claims that he received ineffective assistance of counsel when his counsel failed to request a limiting instruction or move for a mistrial upon hearing the reference to the plea negotiations. He also claims that his attorney failed to present evidence critical to his defense. As a general rule, this court does not review challenges to the effectiveness of defense counsel on direct appeal. United States v. Laughlin, 933 F.2d 786, 788 (9th Cir.1991) ("Such an issue is more appropriately reserved for habeas corpus proceedings, where facts outside the record, but necessary to the disposition of the claim, may be fully developed."). The only exception to this rule is when "the defendant's legal representation was so inadequate as obviously to deny him his sixth amendment right to counsel and the trial court's failure to take notice sua sponte of the problem amounted to plain error." Id. at 789, n. 1 (internal quotations omitted).
 
 
 36
 Because Saltaris' ineffective assistance of counsel claim does not fall within the exception to the general rule against hearing such claims on direct appeal, we decline to address the claim.
 
 D. Sufficiency of the Evidence
 
 37
 Saltaris was convicted of conspiracy to possess and distribute a controlled substance, possession with intent to distribute a controlled substance, and use of a firearm during a drug trafficking offense. Saltaris, who made a motion for judgment of acquittal following the conclusion of the government's case, contends that he should have been acquitted because the government never produced evidence that he knew there was cocaine in the boxes. Saltaris' claim is without merit.
 
 
 38
 Evidence presented at trial is sufficient to support a conviction if, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Ocampo, 937 F.2d 485, 488 (9th Cir.1991).
 
 
 39
 Credible evidence was presented to the jury suggesting that Saltaris was instrumental in the conspiracy. The jury was told that Saltaris had accompanied Vasquez from the east coast and was jointly responsible for transporting the cocaine to New York. The record also showed that Saltaris met with Gonzalez-Perez shortly before the cocaine was loaded into the truck, and, from this evidence, a jury could have concluded that the men were discussing details of the upcoming cross-country shipment. A reasonable jury also could have concluded that Saltaris knew what was in the boxes based on Saltaris' post-arrest statements. Saltaris' arresting officer testified that Saltaris' said on the night of his arrest that he could assist in finding the owner of the "stuff" and that he knew someone who could supply up to 3500 kilograms at a time. Finally, Saltaris conceded that the handgun found in his sports bag near the drugs was in his possession.
 
 
 40
 Accordingly, we conclude that a rational jury could have found Saltaris guilty beyond a reasonable doubt on all counts on the basis of the evidence presented.
 
 
 41
 III. GONZALEZ-PEREZ'S CHALLENGES TO THE TRIAL COURT'S RULINGS
 
 
 42
 Like Saltaris, Gonzalez-Perez claims that a number of errors were made during his trial, each sufficient to warrant reversal. Gonzalez-Perez claims the following: A) the prosecution engaged in misconduct when, in closing argument, he made a number of remarks to the jury outside the scope of the admitted evidence; B) the court displayed partiality to the government that prevented Gonzalez-Perez from obtaining a fair trial; C) Gonzalez-Perez received ineffective assistance of counsel when his attorney failed to present evidence critical to his defense; and D) the jury verdict was not supported by the evidence. Each of these claims is addressed separately below.
 
 A. Prosecutorial Misconduct
 
 43
 Gonzalez-Perez contends that the prosecution engaged in misconduct when, in its closing argument to the jury, it asserted that several pieces of physical evidence had come from the person of Gonzalez-Perez. Because Gonzalez-Perez's trial counsel did not object to the assertions of the prosecutor, the allegedly improper statements are reviewed for plain error. See Mitchell v. Goldsmith, 878 F.2d 319, 323-24 (9th Cir.1989).
 
 
 44
 Gonzalez-Perez was one of three men arrested in the vicinity of the load car after the discovery of the contraband in the truck. All three were searched, and the items obtained from them were put in evidence bags. During the testimony of one of the officers, the prosecution established that the various items had come from the defendants, and then sought to establish that each of the men possessed each other's pager number. Gonzalez-Perez's counsel objected, claiming lack of foundation, but was overruled. The jury was then dismissed for the day and counsel continued to discuss the admissibility of the evidence with the court. The court explained that although the prosecution had not yet connected up particular pieces of evidence to particular defendants, it would receive the evidence because it was relevant "no matter who had [what]." The court continued, however, by saying that if the prosecution wanted to pin a particular item on a particular individual, it would have to show more. In remarks directed to the prosecution, the court commented as follows:
 
 
 45
 ... frankly it's a waste of time. But if they [defense counsel] hold you to it, you're going to have to produce the man that says, "I took these things from this person and put them in this property bag" ... you're going to have to connect it up.
 
 
 46
 The following day, the government did just that. It put on the stand the officer who had placed the items in the evidence bags. That officer testified that she remembered taking items from each of the named defendants the night of the arrests and putting the items in separate bags with separate name tags. She further testified that none of the items was commingled. Because the chain of custody showed that the items were found in Gonzalez-Perez's possession at the time of arrest, the comments made by the prosecution in its closing arguments were proper. See United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir.), cert. denied 112 U.S. 164 (1991).
 
 
 47
 Gonzalez-Perez also contends that the prosecution engaged in misconduct when, in closing argument, it argued to the jury that there was "no dispute" as to certain testimony of Saravia, the taxi driver who allegedly had driven Gonzalez-Perez and other defendants to a number of locations that night, and who was a key prosecution witness. Saravia testified that he had driven Gonzalez-Perez to the Motel 6 prior to the delivery of the cocaine, and that Gonzalez-Perez had conferred with someone at the Motel 6 (the prosecution contended at trial that Gonzalez-Perez had conferred with Saltaris regarding the details of the upcoming cross-country transport of the cocaine). Gonzalez-Perez argues that, by saying there was "no dispute" as to this testimony, the prosecution improperly was commenting on Gonzalez-Perez's exercise of his Fifth Amendment right not to testify. Ninth Circuit case law, however, makes clear that, even where the defendant has declined to testify, the government may argue that its proof is uncontested so long as it is not phrased so as to call attention to the defendant's decision not to testify. See, e.g., United States v. Lopez-Alvarez, 970 F.2d 583, 595-96 (9th Cir.), cert. denied, 113 S.Ct. 504 (1992). Here, as in Lopez-Alvarez, the prosecution made no express reference to the defendant's failure to testify, and did not otherwise implicate the defendant's exercise of his Fifth Amendment right. See id. at 596.
 
 B. Judicial Misconduct
 
 48
 Gonzalez-Perez contends that the court made misleading and prejudicial comments. The following facts underlie Gonzalez-Perez's claim. Counsel for Gonzalez-Perez called Officer Moore as a defense witness. Counsel proceeded to ask Moore what he had been told about the remarks made by the taxi driver Saravia. In the face of hearsay objections from the prosecution, the court advised defense counsel to change the form of its questions. When the government persisted with its objections, the court responded with some impatience that "there's nothing happening here." In the interchange that ensued, the court repeated this admonition twice. When defense counsel indicated to the court out of the jury's presence that he thought the court's statements might be construed as directed to the value of the testimony of the witness, the court explained that its remarks were addressed to what it saw as the futility of the objections of the government. Cognizant of defense counsel's concern, however, the court suggested that it issue a curative instruction to rectify any possible misunderstanding, and defense counsel approved of the phrasing that the court said it would use. When the trial resumed, the court instructed the jury in relevant part as follows:
 
 
 49
 I want to be crystal clear about what [I] meant. I don't ever comment on a witness' testimony or the significance of that testimony from either side. That's your job, that's not mine. All I was really trying to convey was the thought that I wasn't really grasping what the government's objection was, but I thought as long as everybody had a chance to ask their questions, it was probably going to wash out. But I was not, and I trust nobody would have taken it as a comment to either side on the significance of the testimony being given.
 
 
 50
 Although Gonzalez-Perez contends that even this curative instruction was flawed because the court used the ambiguous phrase "wash out," it is clear that the prejudice to the defendant, if any, was de minimis. The court acted to rectify any improper impression that its remarks might have created, and the court's actions certainly did not rise to the level of judicial misconduct. See Kennedy v. Los Angeles Police Dep't, 901 F.2d 702, 709 (9th Cir.1989) (reversal on the basis of judicial misconduct is appropriate only where the trial judge manifests actual bias or, through his actions during the trial, creates an abiding impression of partiality).
 
 C. Ineffective Assistance of Counsel
 
 51
 Gonzalez-Perez claims that he received ineffective assistance of counsel when his attorney failed to call as a witness co-defendant Vasquez, who might have testified that he never met with Gonzalez-Perez, and when his attorney failed to call for a mistrial after alleged misconduct by the prosecution in its closing arguments. Because Gonzalez-Perez's claim, like Saltaris' claim, see supra, does not fall within the exception to the general rule against hearing such claims on direct appeal, we decline to address the claim.
 
 D. Sufficiency of the Evidence
 
 52
 Gonzalez-Perez claims that the evidence was not sufficient to convict him on either of the charges against him. Gonzalez-Perez was found guilty of conspiracy to possess and distribute more than five kilograms of cocaine, and of knowingly being in possession of more than five kilograms of cocaine with intent to distribute.
 
 
 53
 The prosecution produced ample evidence to support the convictions. Evidence found on Gonzalez-Perez's person at the time of his arrest linked him to his co-conspirators (among other items, he had the pager number of another defendant, plane tickets for New York, and a slip of paper with the sum $200,000 written on it), and he conceded that he had lied to the arresting officers when he denied knowing the other two suspects who were arrested with him near the Motel 6 parking lot. Credible evidence also showed that Gonzalez-Perez had stayed in a hotel with another defendant from January 20 to January 23, 1993, the days immediately preceding the arrests; that he had met with Saltaris just prior to the delivery of the cocaine (the jury could have inferred from the evidence that the two were discussing the details of the upcoming shipment of the cocaine); and that Gonzalez-Perez was one of three men that Vasquez met when he picked up the Sentra loaded with the five boxes of cocaine.
 
 
 54
 Accordingly, we conclude that a rational jury could have found Saltaris guilty beyond a reasonable doubt on both counts.
 
 CONCLUSION
 
 55
 For the reasons stated above, the decision of the district court is affirmed.
 
 
 56
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We give no independent weight to the copy of the "Findings of Fact and Conclusions of Law" submitted to this court by the government. This document is nothing more than a copy of the proposed findings proffered to the district court by the Assistant U.S. Attorney after the government had prevailed on the motion to suppress. The word "proposed" has been roughly scribbled out, but the document is not signed by Judge Letts, and is stamped as having been filed with the district court on November 17, 1992, three months after the hearing on the motion to suppress and more than one month after all of the defendants had filed their notices of appeal with this court. Most significantly, the district court docket does not show that the district court ever approved these findings
 
 
 [2]
 Although neither counsel provided a clear answer in response to questioning at oral argument concerning when the officers first learned that Saltaris had been a DEA informant, the record is clear that the officers were aware of it from the time that they conducted the background check in the first hours of their surveillance
 
 
 [3]
 In a point-heading in his brief, Gonzalez-Perez also appears to contest the search of the truck, but, having claimed no legitimate expectation of privacy in the truck, Gonzalez-Perez lacks standing to assert this claim. See discussion of Saltaris' standing, supra
 
 
 [4]
 Gonzalez-Perez points to what appear to be two factual misrepresentations by the government. The government claims that, at the time of Gonzalez-Perez's arrest, Moore already had received word from Agent Bernhard that Vasquez had revealed that he picked up the Sentra from "three male latins." The government thus implies that at the moment when Moore saw Gonzalez-Perez walk into the parking lot, Moore had strong reason to believe that Gonzalez-Perez was one of the "latins" already identified by Vasquez as having been associated with the car. The government's claim, however, is contradicted by the declaration of Agent Bernhard. Bernhard testified that Vasquez only revealed to him the information about the "three male latins" at about the same time that Bernhard was informed by another officer that Gonzalez-Perez and two other suspects already had been arrested in the vicinity of the load car and already had been taken to a station (implying that at least a few minutes had passed since the arrests). The declaration of Bernhard thus strongly suggests that Gonzalez-Perez was arrested before Vasquez ever told Bernhard about the "three latins." The government also appears to mischaracterize the record when it claims that Gonzalez-Perez started to run when, looking in the direction of the Sentra, he "saw the marked police car activate its lights to stop Valencia." The declaration of Moore, the only evidence the government submitted in opposition to Gonzalez-Perez's motion to suppress, does not mention any activation of lights, and only notes that Gonzalez-Perez began hurrying when he saw the marked car following Valencia. These misrepresentations are not considered and do not affect our conclusion that the officers had probable cause to make the arrest
 
 
 [5]
 One of the rationales for admission of the evidence articulated by the district court was improper. In concluding that the evidence was relevant, the district court commented to counsel that it would show that Saltaris "could be now a skilled law breaker ... The trial seems to be the best educator of people who go back." Although this passage is ambiguous, the court seems to have based its decision at least in part on the fact that the evidence would allow the jury to draw an inference that Saltaris has a propensity to violate the law. This is precisely the inference for which the evidence may not be used. See, e.g., United States v. Hernandez-Miranda, 601 F.2d 1104, 1108 (9th Cir.1979). As described above, however, the district court's comments to counsel do not constitute reversible error because, as the district court properly instructed the jury, the evidence was admissible to show knowledge